## The Pittsburg, Fort Wayne and Chicago Railway Co. *versus* Shaeffer *et al.*

1. Mere forbearance by the creditor to the principal, however prejudicial to the surety, will not discharge the surety.

2. The same rule applies to sureties for officers of corporations, whose duties require the receipt and disbursement of various sums of money, as to sureties for the payment of a single sum.

3. The rules of a railway company required from the cashier monthly reports and payments ; the bond of the cashier and his sureties was condi-

[Pittsburg, Fort Wayne and Chicago Railway Co. *v.* Shaeffer.]

tioned, that he should faithfully discharge his duties as required by the rules, "a copy of which he acknowledged to have received;" the cashier neglected to account and pay over for six months, when he was dismissed, and the sureties were not notified of his default for three months afterwards. *Held*, that they were not discharged.

November 2d 1868. Before Thompson, C. J., Agnew, Sharswood and Williams, JJ. Read, J., absent.

Error to the District Court of the *county of Allegheny* : No. 149, to October and November Term 1866.

This was an action of debt in which the writ issued June 26th 1865. It was brought by The Pittsburg, Fort Wayne and Chicago Railway Company against Charles A. Shaeffer, John N. Shaeffer, John Gangwisch and Andrew Kloman. Charles A. Shaeffer was not summoned, and the case was tried against the other defendants.

The plaintiffs declared on the bond to them from Charles A. Shaeffer, as their cashier, and the other defendants, as his sureties, dated May 1st 1862, in the penalty of $10,000.

The condition of the bond was, "That if the said Charles A. Shaeffer shall, with care and diligence, faithfully discharge the duties devolving upon him as cashier, as required by the present rules and regulations of said Pittsburg, Fort Wayne and Chicago Railway Company (a copy whereof he acknowledges to have received), hereby adopted, and by such other rules and regulations as said company may hereafter adopt, and shall promptly obey all orders that may be issued by the said company, or by their duly appointed officers or agents, then this obligation to be null and void; otherwise to be and remain in full force and effect.

"And it is hereby expressly agreed, that in any action on this bond, and on any question however or wherever arising or contested, as to the amount of money received, paid over or due, or any damages occasioned by the said Charles A. Shaeffer, or chargeable in any way whatever to said Charles A. Shaeffer, as aforesaid, whether by negligence, error, disregard of the instructions which he may from time to time receive, or otherwise howsoever, the books and papers of the said company, kept in the general offices of said company, or elsewhere, and the instructions of the proper officers of said company, which may from time to time be given, shall be competent evidence of the matters therein contained against the said Charles A. Shaeffer as aforesaid, and against his sureties on this bond; and the authenticity of all such books, papers and instructions, may be proved by any officer of said company having knowledge thereof, and this notwithstanding any interest which such officer may have as a stockholder or otherwise, in the Pittsburg, Fort Wayne and Chicago Railway Company."

[Pittsburg, Fort Wayne and Chicago Railway Co. *v.* Shaeffer.]

The breach alleged was that "Shaeffer did not with care and diligence faithfully discharge the duties devolving upon him as cashier, &c., as required by the rules and regulations of said company (a copy whereof he acknowledges *to have received*), and as required by other rules and regulations of said company thereafter made and adopted; and did not promptly obey all orders that were issued by the said company, or by their duly appointed officers; but, on the contrary, made default in his duties as cashier, as aforesaid, in the settlement, accounting for and payment over to said company of the moneys that came into his hands as cashier as aforesaid, to the amount of $10,000—which it was his duty, by reason of the rules and regulations aforesaid, to settle for, account and pay over to said company; and did not with care and diligence faithfully discharge the duties devolving upon him as cashier, as required by the said rules and regulations of said company, and did not promptly obey all orders that were issued by said company, or by their agents and duly appointed officers, so as to render said writing obligatory, null and void."

One of the regulations was that the agents, amongst whom the cashier was included, should make a monthly return to the auditor of the company on or before the 10th of each month, in the manner and form prescribed.

The last complete account which Shaeffer furnished was in May 1864.

In October 1864, the comptroller of the company notified Shaeffer to close his accounts, and gave him notice that another cashier would be appointed in his place. His successor was appointed November 1st 1864. Shaeffer and the paymaster, whose business it was to examine all the accounts, went over the accounts together in December 1864, and appointed another meeting for the same purpose which was to be a few days afterwards, but Shaeffer did not again meet the paymaster. Shaeffer left Pittsburg on the 5th of February 1865, and went out of the country.

Notice was sent on the 16th of February 1865 to each of the sureties, as follows:—

"You will please take notice that Charles A. Shaeffer, the cashier of this company, at the Penn station, in this city, upon whose bond you are a surety for the faithful discharge of his duty to the company, has become largely in arrear in his payments, and fails to appear to make settlement with the company. As we look to you and his other sureties to make good any deficit in his account, it was thought advisable to apprise you thus early of his official misconduct, that you may take such measures for your protection as may seem best.

"We will, if desired, show you the present condition of his

account, at our office, No. 23 Fifth street, where it is open at all times for your inspection.

"Have the kindness to acknowledge the receipt of this note.

Yours, respectfully,

W. H. BARNES, Comptroller."

'The account of the company with Shaeffer showed that the balance against him, in May 1864, was $4642.71; in June $5270.59; in July $4085.93; in August $2110.83; in September $3101.83; in October $13,891.27.

The defendants gave evidence for the purpose of showing Shaeffer's solvency up to about the time he left the country.

The plaintiffs asked the court to instruct the jury :—

"1. That mere forbearance on the part of the creditor, however prejudicial to the surety, will not discharge such surety. It is his peculiar business to judge of the danger to be apprehended from delay, and to quicken the creditor, where the occasion requires it, in the way known to the law; in default of which the loss incurred is necessarily to be attributed to his own supineness.

2. That nothing short of an engagement by the creditor, by which his hands are tied and suit prevented, can discharge the surety.

3. That facts relied on to discharge a surety, must be fully and distinctly proved to the satisfaction of the court.

4. That there is no evidence of such concealment of the state of the accounts, or of the conduct of the principal, as furnishes any defence to the sureties in this case.

5. That the evidence in this case shows only that the plaintiffs did not require the said Shaeffer to conform strictly to the rules of the company, relating to his monthly returns.

6. That there must have been *intentional and positive* concealments on the part of the plaintiffs, of facts to the injury of the sureties, in order to furnish any defence to the sureties in an action on the bond."

The court (Hampton, P. J.), answered :—

"The foregoing points are sufficiently answered in the general charge, and so far as they are not answered there, they are refused."

After discussing the questions presented by the case, he further charged :—

"For these reasons, thus briefly noticed, as well as many others that might be assigned, it seems to me [the rule in relation to the security for a certain sum of money merely, payable on a certain day, may, and does, differ very materially from the one applicable to cases like the present. What, then, is the principle which should govern in such cases? The company, in my opinion, are

9 P. F. SMITH—23

[Pittsburg, Fort Wayne and Chicago Railway Co. *v.* Shaeffer.]

bound in equity and good faith to deal fairly and honestly with those who become the sureties of their officers, by exercising reasonable care and caution and diligence, in order to protect, not only the interests of those whom they represent, but, also, the bail in the bond from loss through any dishonesty or negligence of their own agents.] In this respect, the company is a trustee for its stockholders and creditors, and the safety and solvency of the bail stand intimately connected with the interests of the company, because both may be endangered by the license now claimed for the company. For if the company may delay to call their agents to account and compel them to pay over the moneys received by them, for three months after default made, and after an agent has been removed for that cause, why may they not delay three years, or for any other period, and in the mean time, not only the principal, but the sureties, also, may become insolvent, or leave the country, and the whole amount be utterly lost?

"The plaintiffs here allege that Shaeffer became a defaulter as early as the 1st of June 1864, and continued to be so at the end of every month from that time till the 1st of November, being a period of six months, constituting six defaults, for he was bound by their rules to make his accounts every month, and pay over all moneys in his hands. He was then dismissed from office because he failed to render his monthly reports, and another appointed to fill his place on the 1st of November. During all this time, when it is alleged the company knew he was a defaulter to a large amount, they continued him in office, and neither compelled him to settle his account, pay over the moneys he had received nor give any notice to his bail of his defalcation. Not this only, but notwithstanding he had been dismissed for breach of duty, as they claim, they neither brought suit against him, nor notified his bail, till the 16th of February 1865, a period of three months and a half more, making a period of some eight months and a half after they knew of his first default, as it is alleged, and in the mean time Shaeffer had disposed of a large amount of property and left the country, and has never since been seen or heard of in the United States.

"Now it does appear to me, that all these facts, if true, and of that you are to judge, ought to and do require the application of a very different rule from that relating merely to the ordinary case of creditor and surety. [We therefore instruct you that the plaintiffs were bound within a reasonable time after these repeated defaults became known to them, if they were known, of which you are to judge, and if the company did not know of his default they could have called their officers and proved that fact, but more especially after he had been dismissed for a breach of duty, to either proceed to collect the money due from him, or notify the

[Pittsburg, Fort Wayne and Chicago Railway Co. v. Shaeffer.]

bail of his defalcation and dismissal, in order that they might, if possible, secure themselves, and if they failed to do so, they cannot recover in this action], and your verdict ought to be for the defendants."

The verdict was for the defendants. The plaintiffs removed the case into the Supreme Court, and assigned for error the refusal of the court to affirm their points, and those parts of the charge included in brackets.

*J. A. Lowrie* and *W. H. Lowrie*, for plaintiffs in error.—The same rule is applicable to the responsibility of sureties, where the bond is for the performance of various duties, as for the payment of a certain sum of money : United States *v.* Vanzandt, 11 Wheat. 184 ; United States *v.* Kirkpatrick, 9 Id. 720 ; Dox *v.* The Postmaster-General, 1 Peters 318 ; People *v.* Russell, 4 Wendell 570 ; Wood *v.* Barstow, 10 Pick. 368 ; McGlee *v.* Gerrin, 25 Alabama 176 ; Dawson *v.* Lawes, 23 Eng. L. and Eq. 365 ; Richards *v.* Commonwealth, 4 Wright 146. It is the *surety's* business to judge of the danger and quicken the creditor : United States *v.* Simpson, 3 Penna. R. 437 ; Mundorff *v.* Singer, 5 Watts 172 ; Cope *v.* Smith, 8 S. & R. 112 ; Trent Navigation Co. *v.* Harley, 10 East Rep. 34 ; London Assurance Co. *v.* Buckle, 4 J. B. Moore 153, 16 Eng. Com. L. R. 368 ; Geddis *v.* Hawk, 1 Watts 280 ; Schroeppel *v.* Shaw, 5 Barb. S. C. 580 ; Brubaker *v.* Okeson, 12 Casey 522 ; Carson *v.* Jones, 5 Ired. Eq. 196 ; Heath *v.* Key, 1 Younge & Jarvis 434 ; Nares *v.* Rawles, 14 East Rep. 514 ; Orme *v.* Young, 1 Holt's N. P. C. 84, 3 Eng. Com. L. R. 43. A concealment to discharge a surety must be of facts known to the creditor and unknown to him, and such as would materially increase the risk : Morris Canal & Bank. Co. *v.* Van Worst, 1 N. Jersey 100 ; Bryant *v.* Crosley, 36 Maine 562 ; McTaggart *v.* Watson, 10 Bligh 618. Nothing short of an agreement to give time which prevents the creditor from bringing suit will discharge the surety : Hellen *v.* Crawford, 8 Wright 105. The creditor is not bound to use active diligence : Hubbell *v.* Carpenter, 5 Barb. S. C. 520 ; Wilson *v.* Green, 25 Verm. 450 ; State *v.* McIntosh, 9 Ired. 307 ; People *v.* Cox, Id. 69 ; Boreland *v.* Washington Co., 8 Harris 150. Facts relied on to discharge the surety must be distinctly proved to the satisfaction of the court : Wolleshlare *v.* Searles, 9 Wright 45.

*J. L. Koethen* and *M. W. Acheson* (with whom was *T. B. Hamilton*), for defendants in error.—The plaintiffs having continued in their employ a cashier known to them, but not the sureties, to be a defaulter, did it at their own risk : Combe *v.* Woolf, 8 Bingham 156 ; Montague *v.* Tidcombe, 2 Vernon 518. Any concealment by the creditor of material facts or withholding pro-

356        SUPREME COURT        [*Pittsburg*

[Pittsburg, Fort Wayne and Chicago Railway Co. v. Shaeffer.]

per information will relieve the surety : 1 Story's Eq. Jur. § 324 ; Watts *v.* Shuttleworth, 5 Hurlstone & Norman 235.   A guarantor or surety is entitled to reasonable protection : Stark *v.* Fuller, 6 Wright 323 ; Miller *v.* Berkey, 3 Casey 317 ; Taylor *v.* Bank of Kentucky, 2 J. J. Marsh. 568 ; Railton *v.* Matthews, 10 Clark & Finn. 934 ; Smith *v.* Bank of Scotland, 1 Dow 572 ; Wayne *v.* Com. National Bank, 2 P. F. Smith 343.   The surety by notice can compel the creditor to proceed against the principal : Wetzel *v.* Sponsler, 6 Harris 460.

The opinion of the court was delivered, January 4th 1869, by
SHARSWOOD, J.—The rule is well settled that mere forbearance by the creditor to the principal debtor, however prejudicial it may be to the surety, will not have the effect of discharging him from his liability : United States *v.* Simpson, 3 Penna. R. 437.   That this is the general principle was admitted by the learned judge in the court below, but he thought that the sureties of a railroad officer, charged with the receipt and disbursement of various sums of money, formed an exception, and that in such a case it was the duty of the company to dismiss the officer as soon as any default became known, and to give notice to his sureties in order that they might take measures to secure themselves by proceedings against the principal.
But no authorities are to be found in the books sustaining any such distinction.   On the contrary, in regard to the sureties of the officers of government, whose duties in receiving and disbursing money are of the same varied character, it has been invariably held that they are not discharged by such indulgence. The United States *v.* Kirkpatrick, 9 Wheat. 720, was the case of a collector of direct taxes and internal duties.   "It is admitted," said Story, J., "that mere laches, unaccompanied with fraud, forms no discharge of a contract of this nature between private individuals.   Such is the clear result of the authorities.   Why, then, should a more rigid principle be applied to the government—a principle which is at war with the general indulgence allowed to its rights, which are ordinarily protected from the bars arising from length of time and negligence ?   It is said that the laws require that settlement should be made at short and stated periods ; and that the sureties have a right to look to this as their security. But these provisions of the law are created by the government for its own security and protection, and to regulate the conduct of its own officers.   They are merely directory to such officers, and constitute no part of the contract with the surety.   The surety may place confidence in the agents of the government, and rely on their fidelity in office ; but he has the same means of judgment as the government itself, and the latter does not undertake to guaranty such fidelity."

This principle was reconsidered and reaffirmed in The United States v. Vanzandt, 11 Wheat. 184, where it was held that the omission of the proper officer to recall a delinquent paymaster contrary to the express injunction of an Act of Congress, did not discharge the surety : The Commonwealth v. Brice, 10 Harris 211.

The reasons so clearly stated by Story, J., in regard to officers of government, apply with equal force to the officers of corporations.   Corporations can act only by officers and agents.   They do not guaranty to the sureties of one officer the fidelity of the others.   The rules and regulations which they may establish in regard to periodical returns and payments are for their own security, and not for the benefit of the sureties.   The sureties, by executing the bond, became responsible for the fidelity of their principal.   It is no collateral engagement into which they enter, dependent on some contingency or condition different from the engagement of their principal.   They become joint obligors with him in the same bond, and with the same condition underwritten. The fact that there were other unfaithful officers and agents of the corporation, who knew and connived at his infidelity, ought not in reason, and does not in law or equity, relieve them from their responsibility for him.   They undertake that he shall be honest, though all around him are rogues.   Were the rule different, by .a conspiracy. between the officers of a bank or other moneyed institution, all their sureties might be discharged.   It is impossible that a doctrine leading to such consequences can be sound.   In a suit by a bank against a surety on the cashier's bond, a plea that the cashier's defalcation was known to and connived at by the officers of the bank, was held to be no defence : Taylor v. Bank of Kentucky, 2 J. J. Marsh. 564.

But it is urged that in this case the rules and regulations of the railway company were expressly made a part of the contract with the sureties.   The condition of the bond in suit was that the said Charles A. Shaeffer "shall, with care and diligence, faithfully discharge the duties devolving upon him as cashier, as required by the present rules and regulations of said Pittsburg, Fort Wayne and Chicago Railway Company (a copy of which he acknowledged to have received), hereby adopted, and by such other rules and regulations as said company may hereafter adopt, and shall promptly obey all orders that may be issued by said company, or by their duly appointed officers or agents."   Even giving to the words "hereby adopted," which are plainly, however, a mere clerical error for "heretofore adopted," all the force attributed to them, it is not easy to see how it helps the sureties. One of these rules, and the one principally relied on by the defendants, was that "they (the cashiers) shall. make a monthly return to the auditor on or before the 10th of each month, in manner and form prescribed."   Shaeffer failed to make such

[Pittsburg, Fort Wayne and Chicago Railway Co. *v.* Shaeffer.]

returns as is alleged. His failure was a breach of the condition of the bond. It is not provided in the rules that on his default in making returns he shall be immediately dismissed, and the sureties notified of his default. Admitting such a rule would have been a part of the contract, the absence of it leaves the case bare of any legal or equitable ground of defence. It was clearly not the duty of the company to give notice to the sureties of the principal's failure to make returns: Orme *v.* Young, 1 Holt N. P. 84.

There was nothing in this case but simple indulgence and forbearance, and that under circumstances which were not such as to call for any extraordinary diligence. Whatever may have been the discrepancies between Shaeffer's cash-book and his returns, the account which is annexed to the plaintiffs' paper-book shows that the balances due by him according to the ledger varied from month to month—from May to October 1864—when he was notified of his discharge. In June it was $5270.59; but in August only $2110.83, and in September, $3101.83. The balance found in his hands at the close of his last month (October) was $13,891.27; showing, by subtracting from it the September balance, that his default in that month alone was $10,789.44. This may have been the result of previous defaults brought into that month's accounts; but supposing the directors to have had access to these returns and accounts, and that it was their duty to scrutinize them, what was there to fasten on them the charge of negligence? Even so far as the company—whose interests, and not those of Shaeffer's sureties, they were bound to consult—was concerned, I confess myself unable to discover it.

Judgment reversed, and a *venire facias de novo* awarded.