## AMERICAN BONDING CO. OF BALTIMORE v. SPOKANE BUILDING & LOAN SOC.

### (Circuit Court of Appeals, Ninth Circuit.    May 2, 1904.)

### No. 1,010.

1. FIDELITY INSURANCE — WARRANTIES—BREACH—CORPORATIONS—KNOWLEDGE OF OFFICERS.

   Under 1 Ballinger's Ann. Codes & St. § 4255, providing that all corporate management shall be vested in a board of trustees, where an application for fidelity insurance by a building and loan association stated that the secretary insured derived his authority from the board of trustees, knowledge on the part of a single officer, trustee, or the president of the association that the secretary was indebted to it at the time the policy was issued could not be imputed to the corporation without proof that the officer's knowledge had been communicated to the board, so as to constitute a breach of a warranty in the policy that the secretary was not indebted to the association at the time of the issuance thereof.

2. SAME—FALSE STATEMENTS—KNOWLEDGE.

   Where a fidelity bond securing a building and loan association against the embezzlement of its secretary provided that all the representations made by the employer to the surety were warranted by the employer to be true; that the employé had not, to the knowledge of the employer or its officers, been in arrears or a defaulter, and the association stated that its secretary was not at that time in debt to it; that he had property, funds, securities, and valuables on hand to balance his accounts—such statement did not constitute a warranty that the secretary was not indebted to the association at the time as a fact, but only that he was not so indebted. etc., to the knowledge of the association or its officers.

In Error to the Circuit Court of the United States for the Eastern Division of the District of Washington.

This is an action upon a policy of fidelity insurance issued by the American Bonding & Trust Company of Baltimore City to the defendant in error, the Spokane Building & Loan Society, a corporation of Spokane, Wash. The bond was in the sum of $3,000, dated January 17, 1902, and insured the defendant in error against loss through the embezzlement of its secretary, R. L. Bogardus, for a term of one year. After the execution of the policy, the plaintiff in error changed its corporate name to "American Bonding Company of Baltimore." Prior to the delivery of this bond, and before it became effective, the bonding company requested the building and loan society to answer in writing certain interrogatories concerning the risk about to be assumed under the bond. Accompanying these written questions, and as part of the same instrument, which was addressed to the Spokane Building & Loan Society, was the following statement: "An application has been made to this company to issue a bond of security for Mr. R. L. Bogardus as secretary in your service, at Spokane, to the amount of $3,000.00. This company desires to have written answers to the following questions, and these answers will be taken as the basis of the bond if issued." At the foot of this employer's statement was the following agreement: "It is agreed that the above answers are warranted to be true by the obligee, and are to be taken as conditions precedent, and as the basis of the said bond applied for, or any renewal or continuation of the same, that may be issued by The American Bonding & Trust Company of Baltimore City to the undersigned, upon the person above named. Dated at Spokane, Wash., this 13th day of January, 1902. Signature of the Employer Spokane Building & Loan Society. By S. S. Glidden, Prest. Official Capacity. [Seal of Spokane Building & Loan So-

¶ 1. Fidelity insurance, see note to American Credit Indemnity Co. v. Wood, 19 C. C. A. 273.

130 F.—47

738 130 FEDERAL REPORTER.

ciety.]" The building and loan society made written answer to the interrogatories, signed the agreement above set out, and returned the same to the bonding company, which thereupon executed its fidelity bond.

The employer's statement, besides others, contained the following questions and answers: "Q. 13. When were his accounts last examined? A. Being done now by a committee. Q. 14. Were they, at that time, in every respect correct, and proper funds, securities and values on hand to balance? A. Yes, last year. (Later: Now complete and found correct.) Q. 15. (a) Is there now, to your knowledge, any shortage due you by the applicant? A. (a) No. (b) Has he ever been short with you? (b) No. Q. 16. (a) Is he now in debt to you? A. (a) No. (b) If so, state amount and nature of indebtedness? (b) ———. Q. 17. Have you ever sustained loss through the dishonesty of any one holding the position of applicant? A. No."

Among other provisions, the bond contained the following stipulations: "(2) That all the representations made by the employer, his or its officers, to the surety, are warranted by the employer to be true; that the employee has not, to the knowledge of the employer, his or its officers, been in arrears or a defaulter in that position covered by this bond or in any other position: (3) That the surety's liability hereunder shall cease immediately as to subsequent acts of the employee from and after: (a) Discovery by the employer, his or its officers, of any default hereunder on the part of the employee."

During the term covered by this bond, R. L. Bogardus embezzled funds of the Spokane Building & Loan Society to the amount of $3,880. The acts of embezzlement all occurred between September 30 and October 17, 1902.

The bonding company defended the action brought upon this bond on two grounds: First. That the answers to the interrogatories were warranted by the building and loan society to be true, whereas, in fact, the answers to questions 13, 14, 15, 16, and 17 were false, in that, at the time these questions were answered, Bogardus was short in his accounts, his accounts were not correct in every respect, he did not have proper funds, securities, and values on hand to balance, and was in debt to the society. Second. That on the 19th day of September, 1902, the Spokane Building & Loan Society discovered a default under the bond, i. e., discovered that Bogardus was short in his accounts; that the terms of this bond released the bonding company from all acts of embezzlement occurring after the discovery of a default; and that the defalcations in question all occurred after September 19, 1902.

In making his opening statement of this second defense to the jury, counsel said: "Gentlemen of the Jury: I will prove, in addition to what I have already stated, and in addition to what has already been brought out in the evidence, that on the 19th day of September, 1902, President S. S. Glidden, one of the officers of the Spokane Building & Loan Society, discovered a default under this bond; that is, he discovered that Mr. Bogardus was short in his accounts. Then, under the provisions of the bond, which is already in evidence, which provides that we shall not be liable for a default occurring after the discovery of a default—under that bond we shall ask, upon the evidence that has been introduced, and some in addition to that, a verdict at your hands on the ground that on the 19th of September, 1902, the plaintiff discovered a default under this bond, and that the pleadings themselves show that the acts of embezzlement complained of, which they are seeking to hold us for, occurred after that date." Thereupon plaintiffs below moved the court to strike out this defense and rule out all evidence thereunder, for the reason that the facts therein stated did not constitute a defense. This motion the court granted on the ground that the default referred to by counsel in his statement was not known or discovered by the managing board of the plaintiff corporation, but simply by its president.

It is claimed by the plaintiff in error that the court erred in ruling out the second affirmative defense, and all evidence thereunder, upon counsel's opening statement thereof. It is further claimed that the court erred in giving instructions 2 and 3 to the jury, and in refusing to give instruction 4, asked by defendant. These instructions read as follows: "(2) This defense, as presented, is manifestly based upon the theory that this contract was made in two parts: That the statement made by the plaintiff to the defendant is one part of the contract, and the policy of insurance or guaranty issued by the

plaintiff to the defendant is the corresponding part; but that is not legally a correct theory of the case. The parties might have made a contract in that form, but that is not what they did do. All their preliminary negotiations and correspondence on the subject are merged in the policy that was issued, and this is a contract in one part; the liability of the defendant is to be determined by what is set forth in its policy or bond. Now, this policy refers to these answers to the interrogatories, and, so far as the bond itself contains a stipulation with respect to those parts, that stipulation is binding upon both sides, and the plaintiff is bound by that stipulation. (3) The material part of this contract with reference to this defense is contained in the second paragraph of the first one of the conditions annexed to the contract, and reads as follows: 'That all the representations made by the employer, his or its officers, to the surety, are warranted by the employer to be true.' Now, this is presented in the pleadings, and the defense has proceeded as if there were a period after the word 'true,' and that it was made an absolute condition that the answers should be taken as absolutely true, or else there was no contract; but the contract as it is set forth and admitted here is different. There is no period after the word 'true,' but a semicolon, and what follows thereafter is to be taken as a part of the same sentence, and as explanatory and as modifying the condition that the answers are to be true. Now, this is what is to be taken as true, 'That the employé has not, to the knowledge of the employer, his or its officers, been in arrears or a defaulter in that position covered by this bond or in any other position; that the employer, his or its officers, upon becoming aware of the employé gambling, speculating, or committing any disreputable, lewd, or unlawful act, will immediately notify the surety in writing.' By this language the warranty that the answers are true is qualified by the condition that they are, so far as the employer had any knowledge, to be taken as true, or warranted to be true. (4) By the terms of the bond here sued upon, and the employer's statement here in evidence, the Spokane Building & Loan Society warranted the truth of certain statements, and, among other things, the plaintiff warranted the truth of the statement that Romaine L. Bogardus had never been short to the society. Now, if you should find that Romaine L. Bogardus had in fact been short to the society, or, in other words, that the statement was not true, then your verdict must be for the defendant."

There are seven assignments of error which are claimed by the plaintiff in error to present two questions to be disposed of by the court: First. Did the fact that a default was discovered under the bond by the president of the Spokane Building & Loan Society on September 19, 1902, preclude said society from recovering for acts of embezzlement occurring after that time? Second. Was it a defense to the action on the bond to prove that Bogardus was short in his accounts, did not have proper funds, securities, and values on hand to balance, had been in arrears to the society, and was in debt to the society at the time the employer's statement was signed?

W. S. Gilbert, for plaintiff in error.

Mark F. Mendenhall and Ernest C. MacDonald, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge, after making the foregoing statement, delivered the opinion of the court.

The answer to the first question propounded by plaintiff in error depends upon whether or not the alleged knowledge of the president, under all the facts and circumstances of this case, can be imputed to the corporation defendant. The principles of law applicable to this question depend upon the particular facts of the given case, the character of the business of the corporation, the methods by which its business is conducted, the duties of its officers, etc. In the present case the

defaulting secretary is shown by the record to be the chief managing officer of the corporation. He collected the dues, had charge of the money, and was authorized to pay it out on account of the society by checks signed by the president and treasurer. The board of trustees was the controlling and governing body of the corporation. Among the questions asked and answers given in the employer's statement is the following:

"Q. 8. (a) Will he [Bogardus] be authorized to pay out of the cash in his custody any amount on your account? A. (a) Yes, by check of president and treasurer. (b) In what manner is such authority given? (b) By the trustees. * * * Q. 10. (a) How often and to whom will he remit or pay over the money received? A. (a) When ordered by the trustees."

The statutes of the state of Washington relative to private corporations prescribe that all corporate control and management shall be vested in and be exercised by a board of trustees. 1 Ballinger's Ann. Codes & St. Wash. § 4255. In the light of these undisputed facts, we are of opinion that the knowledge of a single officer or trustee or the president cannot be imputed to the corporation, unless it is affirmatively shown that his knowledge was brought home to the board of trustees.

The principles of law applicable to the facts of this case upon the point under discussion are so fully stated in Fidelity & Deposit Co. v. Courtney, 186 U. S. 342, 360, 22 Sup. Ct. 833, 46 L. Ed. 1193, that we quote at length therefrom:

"It is well settled that, in the absence of express agreement, the surety on a bond given to a corporation, conditioned for the faithful performance by an employé of his duties, is not relieved from liability for a loss within the condition of the bond by reason of the laches or neglect of the board of directors, not amounting to fraud or bad faith, and that the acts of ordinary agents or employés of the indemnified corporation, conniving at or co-operating with the wrongful act of the bonded employé, will not be imputed to the corporation. United States v. Kirkpatrick (1824) 9 Wheat. 720, 736 [6 L. Ed. 199]; Minor v. Mechanics' Bank (1828) 1 Pet. 46 [7 L. Ed. 47]; Taylor v. Bank of Kentucky (1829) 2 J. J. Marsh. (Ky.) 564; Amherst Bank v. Root (1841) 2 Metc. (Mass.) 522; Louisiana State Bank v. Ledoux (1848) 3 La. Ann. 674; Pittsburg, Fort Wayne & Chicago Ry. Co. v. Shaeffer (1868) 59 Pa. 350, 356; Atlas Bank v. Brownell (1869) 9 R. I. 168 [11 Am. Rep. 231]. The doctrine of these cases is thus epitomized in 59 Pa. 357:

"'Corporations can act only by officers and agents. They do not guaranty to the sureties of one officer the fidelity of the others. The rules and regulations which they may establish in regard to periodical returns and payments are for their own security, and not for the benefit of the sureties. The sureties, by executing the bond, became responsible for the fidelity of their principal. It is no collateral engagement into which they enter, dependent on some contingency or condition different from the engagement of their principal. They become joint obligors with him in the same bond, and with the same condition underwritten. The fact that there were other unfaithful officers and agents of the corporation, who knew and connived at his infidelity, ought not in reason, and does not in law or equity, relieve them from their responsibility for him. They undertake that he shall be honest, though all around him are rogues. Were the rule different, by a conspiracy between the officers of a bank or other moneyed institution, all their sureties might be discharged. It is impossible that a doctrine leading to such consequences can be sound. In a suit by a bank against a surety on the cashier's bond, a plea that the cashier's defalcation was known to and connived at by the officers of the bank was held to be no defense. Taylor v. Bank of Kentucky, 2 J. J. Marsh. 564.'

"So, also, in 3 La. Ann. 674, the court, after suggesting the distinction between the knowledge of the governing body of a bank, the board of directors, of the default of a bonded employé, and the knowledge of such default by another officer or employé, not communicated to the board, thus tersely stated the applicable doctrine (page 684): 'It cannot be said that if one servant of a bank neglects his duty, and by his carelessness permits another servant of the bank to commit a fraud, the surety of the fraudulent servant shall be thereby discharged.'

"And see American Surety Co. v. Pauly, 170 U. S. 156, 157 [18 Sup. Ct. 563, 42 L. Ed. 987], and cases cited. In other words, the principle of law discussed in the case of The Distilled Spirits, 11 Wall. 356 [20 L. Ed. 167], viz., that the knowledge of an agent is in law the knowledge of his principal, is intended for the protection of the other party (actually or constructively) to a transaction for and on account of the principal had with such agent. In the very nature of things, such a principle does not obtain in favor of a surety who has bonded one officer of a corporation, so as to relieve him from the obligations of his bond, by imputing to the corporation knowledge acquired by another employé, subsequent to the execution of the bond (and from negligence or wrongful motives, not disclosed to the corporation), of a wrong committed by the official whose faithful performance of duty was guarantied by the bond. As the rule of imputation to the principal of the knowledge of an agent does not apply to such a case, it must follow that it can only obtain as a consequence of an express provision of the contract of suretyship."

2. Was it a defense to the action on the bond to prove that Bogardus was short in his accounts, did not have proper funds, securities, and values on hand to balance, had been in arrears to the society, and was in debt to the society at the time the employer's statement was signed? The answer to this question depends upon the interpretation to be given to certain provisions in the bond, and to certain answers given in the employer's statement; the contention of the plaintiff in error being that the defendant thereby warranted that Bogardus had never been short in his accounts to the defendant; that he was not at that time in debt to the defendant; that he had proper funds, securities, and values on hand to balance his accounts. By referring to the statement of facts, it will be seen that the language of the employer's statement is, "Is there now, to your knowledge, any shortage due you by the applicant?" and that the language of the provisions of the bond is that the employé "has not, to the knowledge of the employer, his or its officers, been in arrears or a defaulter." In the light of the language contained in the statement of the employer, and in the condition of the bond, we are of opinion that instructions 2 and 3 as given by the court were correct, and that the fourth instruction was properly refused because of the error therein stated that "the plaintiff warranted the truth of the statement that Romaine L. Bogardus had never been short to the society." The instructions of the court in this case were in accord with the principles announced by the Court of Appeals in Supreme Council Catholic K. of A. v. Fidelity & Casualty Co., 63 Fed. 48, 59, 11 C. C. A. 96. The court in that case said:

"The defendant company offered to show that O'Brien was short on the 25th of April, 1891, about $40,000. It also offered to show that O'Brien was short in the funds of the order $61,000 at the time of the application for this bond. Upon objection the evidence was excluded. If this condition of O'Brien's affairs was unknown to the plaintiff order at the time this bond was applied for and accepted, such evidence would have been wholly immaterial. The only representation made by Mr. Coleman, and referred to in the contract as being the basis of contract, was in answer to question 13 of the statement de-

FEDERAL REPORTER.

livered to the defendant company. That question was this: 'When were the accounts last examined, and were they in every respect correct?' To this question Mr. Coleman answered: 'May, 1891, and reported correct by examiners—three supreme trustees.' This evidence tended in no way to show that Mr. Coleman's answer was untrue. His representation was that three examiners had examined O'Brien's accounts, and reported his accounts correct. Now, if such an examination was made, and such a report was made to the council of the order, Mr. Coleman's representation was in no respect untrue. The particular offer covered by this exception embraces no offer to show that Mr. Coleman, or any other officer of the order, at the time this bond was applied for, knew that Mr. O'Brien was a defaulter."

But if it could be considered that the employer's statement and the provisions of the bond were fairly susceptible of two constructions, one favorable to the defendant in error and the other favorable to the plaintiff in error, the instructions of the court would still be correct, for, as is stated in American Surety Co. v. Pauly, 170 U. S. 133, 144, 18 Sup. Ct. 552, 42 L. Ed. 977:

"The former, if consistent with the objects for which the bond was given, must be adopted, and this for the reason that the instrument which the court is invited to interpret was drawn by the attorneys, officers, or agents of the surety company. This is a well-established rule in the law of insurance. National Bank v. Insurance Co., 95 U. S. 673 [24 L. Ed. 563]; Western Ins. Co. v. Cropper, 32 Pa. 351, 355 [75 Am. Dec. 56]; Reynolds v. Commerce Fire Ins. Co., 47 N. Y. 597, 604; Travellers' Ins. Co. v. McConkey, 127 U. S. 661, 666 [8 Sup. Ct. 1360, 32 L. Ed. 308]; Fowkes v. Manchester, etc., Life Ass'n, 3 Best & S., 917, 925. As said by Lord St. Leonards in Anderson v. Fitzgerald, 4 H. L. Cas. *484, *507: 'It [a life policy] is, of course, prepared by the company, and if, therefore, there should be any ambiguity in it, must be taken, according to law, most strongly against the person who prepared it.' "

There is no sound reason why this rule should not be applied in the present case. The object of the bond in suit was to indemnify or insure the defendant in error against loss arising from any act of fraud or dishonesty on the part of Romaine L. Bogardus in connection with his duties as secretary. That object should not be defeated by any narrow interpretation of its provisions, nor by adopting a construction favorable to the plaintiff in error if there be another construction equally admissible under the terms of the instrument executed for the protection of the defendant in error. As was said by the court below in refusing the motion for a new trial:

"If bonding corporations are to be sustained by the business interests of this country as being useful and worthy of support, they should be required to meet their obligations in all such cases as we have presented in this record."

The judgment of the Circuit Court is affirmed, with costs.