GRAND LODGE A. O. U. W. OF R. I. *v.* MASSACHUSETTS BONDING AND INSURANCE CO.

JULY 9, 1915.

PRESENT: Parkhurst, Sweetland, and Vincent, JJ.

*(1)   Surety Bonds.   Covenants.   Warranties.*

Defendant issued a bond to plaintiff to cover defalcation of its officers, March 18, 1910, for one year, and it was continued in force from 1911 to 1912, and from 1912 to 1913. In the application for the bond plaintiff made certain statements as to the duties to be performed by one of its officers; the amount of money that he would be required to handle; the manner in which all funds received by him should be disposed of and the manner and frequency with which his books would be examined and audited. This application contained the statement that his accounts had been examined up to January 26, 1910, and found to be correct, and upon this application the bond was issued.

Upon each renewal plaintiff certified that the accounts had been examined and found correct.

According to the terms of the bond it was given "in consideration of a premium computed at an agreed rate and in further consideration of the statements made by the employer and of the covenants on the part of the employer." Among these covenants was the agreement that the statements as to the

employees were material to the risk and had influenced the company to exe-
cute the bond and that the statements were warranted to be true and if
untrue in any particular then the bond should be null and void.

In the third year of the bond it was discovered that the officer in question had
been a defaulter for some years and was a defaulter at the time the original
bond was given and the defalcations had continued during the period
covered by the bond.

It was admitted that plaintiff had not verified the bank account and securities
for six years, and it was a part of the agreement between the plaintiff and
the company that the accounts of the officer should be compared with the
bank balance.

*Held*, that under the contract it was incumbent upon plaintiff to perform
certain duties which it was agreed by the parties were material to the contract
and plaintiff had not only failed to observe the obligations of the contract,
but its failure was due to its gross negligence.

*Held*, further, that a verdict for defendant was properly directed.

(*2*)   *Surety Bonds.   Conflict of Law.*

Where the application for a bond issued by a foreign corporation was made
through a resident agent of the company and the bond after having been
prepared at the home office was sent by mail to the agent here who was
empowered to deliver or withhold it in his discretion, the contract was made
in this State.

DEBT ON BOND.   Heard on exceptions of plaintiff and
overruled.

VINCENT, J.   This is an action of debt on bond brought
by the Grand Lodge Ancient Order of United Workmen
of Rhode Island, a corporation organized under the laws of
Rhode Island, against the Massachusetts Bonding and
Insurance Company, a corporation organized under the
laws of the State of Massachusetts, to recover for losses
sustained by the plaintiff through the defalcation of one
of its officers.   At the trial of the case in the Superior Court,
upon the conclusion of the testimony, the court directed
a verdict for the defendant.

The case is now before us on the plaintiff's bill of excep-
tions, such exceptions being as follows:

"*First.*   That the justice presiding during said trial
erred in his ruling that the contract in issue in said case
was a Rhode Island contract and in excluding the offer of
plaintiff to introduce in evidence the statute of Massa-
chusetts.   .   .   .

"*Second.* That the justice presiding at the trial of said case erred in refusing to exclude testimony as to other bonds than those in the suit.   .   .   .

"*Third.* That the justice presiding at said trial erred in denying plaintiff's motion for a direction of verdict.   .   .   .

"*Fourth.* That the justice presiding at said trial erred in granting defendant's motion to direct a verdict for defendant,   .   .   .   ."

The bond in question was originally given on March 18, 1910, for one year, and was continued in force from March, 1911, to March, 1912, and again from March, 1912, to March, 1913. This bond and the several continuances thereof were designed and intended to secure the plaintiff against any loss, to the amount of $6,000, which it might sustain by or through the personal dishonesty of certain of its officers therein named, including one J. Irving Davis, its grand recorder.

On March 17, 1910, the plaintiff made an application in writing to the defendant company for the bond, making therein certain statements as to the duties to be performed by the grand recorder; the amount of money that he would be required to handle; the manner in which all funds received by him should be disposed of; and the manner and frequency with which his books and accounts would be examined and audited by an auditing committee.

This application also contained the further statement that the accounts of the said J. Irving Davis had been examined up to January 26, 1910, and found to be correct in every respect.

Upon this application the bond was issued on March 18, 1910, and was continued upon the same terms and conditions for the two years succeeding. Upon each renewal or extension of the bond, the plaintiff certified that the books and accounts of the said Davis had been examined and found correct in every respect.

According to the terms of the bond the same was given "in consideration of a premium computed at an agreed rate,

and in further consideration of the statements made by the employer to the company, and of the covenants on the part of the employer hereinafter contained." Among the covenants appearing later in the bond, we find the following: "It is agreed that the employer has made, or caused to be made, by duly authorized representative, to the company, certain statements in writing of and concerning each of the employees named in the schedule, their respective duties, accounts, financial condition, character, habits, and other matters, and shall make or cause to be made, by a duly authorized representative, like statements as to all new employees, all of which are agreed to be material to the risk and to have influenced the company to execute the bond, and subsequent acceptances hereunder; and if the employer be a corporation, lodge or other association, that said statements were known to, and duly authorized by the board of directors or trustees of the employer; and each, every and all of the matters and things so stated to the company, or at any time, prior to the execution hereof, or any acceptance hereunder, are warranted by the employer to be true; and if any of such statements be false or untrue in any particular; or if such statements be not known to, and fully authorized by the board of directors or trustees of the employer, as above stated; or if the employer shall at any time when inquired by the company, make any false statement or suppress any fact regarding any employee, his duties, accounts, financial condition, character, habits or other matters inquired about; or if the employer at the time of making claim for, or proof of, any loss alleged to have been sustained, shall make any misstatement or suppress any fact affecting the rights, or material to be considered in determining the liability of the company under this bond; then this bond shall be absolutely null and void, and the company shall not be liable for any loss sustained by the employer."

J. Irving Davis, for many years prior to the giving of the bond of March 18, 1910, had been the grand recorder of the plaintiff. In September, 1912, during the third year

covered by the bond, it was discovered that Davis was a defaulter in a very large amount; that he had been a defaulter for some years and was a defaulter at the time the original bond was given; and that his defalcations had continued during the period covered by the bond, in each year of which they amounted to a sum exceeding six thousand dollars.

The plaintiff's contention is, in brief, that inasmuch as its false statements did nor arise from any intentional fraud or deceit, but simply from its neglect to make a sufficiently careful and thorough examination of the books and accounts of its grand recorder to detect his defalcations, the defendant cannot avoid its liability on the bond. In other words, that the bond is not to be avoided by reason of the negligence or improper conduct of the officers or agents of the plaintiff, upon whom devolved the duty of examination, nor by reason of its failure to perform mere promissory statements assuming the performance of duties on the part of its employees or agents.

In the present case the plaintiff obtained the bond on March 18, 1910, upon the representation in its application that the accounts of Davis had been examined as of January 26, 1910, and found to be correct in every respect; that he had always faithfully and punctually accounted for all money and property; that he had always had proper securities and funds on hand to balance his accounts; that there was no shortage due; that he had never been short in his accounts; and that his books and accounts would be audited and verified with funds in hand or in bank, at least every two months. The application contained an agreement on the part of the plaintiff that these answers should be warranties and should constitute the basis of and form a part of the bond or any continuation thereof.

It is admitted that Davis had been a defaulter since 1906, and that at the time of the original application for the bond he was in default in the sum of $22,000 and upwards; that his defalcations continued down to September 26, 1912, reaching approximately the sum of $51,000. As to the

amount of the defalcations prior to the date of the bond, it is sufficient to say that the bond purports to and does, by its terms, secure the plaintiff from loss during a definite period therein named and is in no way retroactive. Besides it is expressly stipulated in the contract that the defendant shall not be liable for anything due and owing from any employee to the employer prior to the term of the bond. It is also admitted that neither the plaintiff nor anyone representing it ever verified at the bank the amount of funds and securities at any time from 1906 to September 26, 1912.

The members of the finance committee, upon whom devolved the duty of examining and verifying the books and accounts of Davis, testified that they regularly audited such books and accounts as presented to them by him and that they never at any time from 1905 to September, 1912, visited or obtained from the bank any statement of the plaintiff's account for the purpose of verifying the account of the recorder.

It was a part of the plaintiff's contract to compare the accounts of its recorder with the balance in bank and in the exercise of ordinary care such comparison could not be omitted. Had this been done the defalcation could have been readily and easily discovered.

The plaintiff has not only failed to observe the clear obligations of its contract, but its failure to do so, according to its own witnesses, was due to its own gross negligence. The plaintiff cites numerous authorities in support of its contention which upon examination do not seem to us to bear directly upon the questions presented by the case at bar.

In considering this contention and the numerous cases which the plaintiff has cited in support thereof, it must be borne in mind that the contract between the parties entails upon the plaintiff the performance of certain specific duties as a part thereof. The duty which the plaintiff has taken upon itself under the contract to examine the books and accounts of Davis at certain intervals, and to compare the same with the balance in bank for the purpose of detecting

any shortage or discrepancy is, as the contract sets forth, material to the risk and a part of the consideration for the execution and delivery of the bond on the part of the defendant. The plaintiff also, in and by the contract, warrants the truth of all and each of the matters and things stated by it regarding the employees named in its schedule, whether such statements were made prior to or upon the execution of the bond, and agrees that if any of such statements be false or untrue in any particular, the defendant shall not be liable.

Many of the authorities cited by the plaintiff do not seem to us, upon examination, to have any direct bearing upon the question presented by the case at bar.

The plaintiff cites a number of cases to the effect that the failure of an officer of a corporation to examine the accounts of another officer, under a provision of the by-laws of such corporation, will not be sufficient to relieve the surety of liability on the bond. Such is not the question here.

A brief reference to some of the other cases cited by the plaintiff will suffice to show their inapplicability to the case at bar.

In *Pittsburgh, &c. R. R.* v. *Shaeffer,* 59 Pa. St., 350 it was held that the neglect of a railroad employee to make certain reports to an auditor, as prescribed by the rules of the company, would not discharge a bond. In *Fidelity Company* v. *Gate City Bank,* 97 Ga. 634, the contract required the defendant to give notice to the company upon the discovery of any fraud or dishonesty on the part of its employee, but the contract contained nothing making it incumbent upon the bank to exercise any diligence in the matter or to supervise the conduct of the employee. The court held that the knowledge of a coemployee that the insured was dishonest could not be imputed to the bank and the payment of the bond could not be avoided. In *Gilliat* v. *Pawtucket M. F. Ins. Co.,* 8 R. I. 282, the defendant sought to avoid the payment of an insurance policy on the ground that the applicant for insurance had undertaken to maintain a force pump and

an abundance of water which he had failed to do. The question in the application for insurance was: "What are the facilities for extinguishing fires" to which the answer was given, "Force pump and abundance of water." It was not claimed that the statement was untrue at the time it was made, and the court held that in the absence of any promise or guaranty that the conditions specified as existing at the time of the application would be maintained in the future, the verdict of the jury for the plaintiff should not be set aside. In *National Bank* v. *Insurance Co.*, 95 U. S. 673, it was held that an overestimate of the value of property by the insured which was not intentional would not vitiate the policy. In *Moulor* v. *American Life Ins. Co.*, 111 U. S. 335, it was held that where an applicant for insurance innocently stated that he had never had a certain disease, he not knowing otherwise, the falsity of the statement would not be sufficient to avoid the policy. In *Guarantee Co. of North America* v. *Mechanics Savings Bank and Trust Co.*, 80 Fed. 766, it was held that the obligor on a bond is not released from liability by the want of even ordinary prudence on the part of the assured in lessening the risk, unless he expressly stipulates therefor. In *Building and Loan Ass'n* v. *U. S. Fidelity and Guarantee Co.*, 118 Iowa, 729, it was held that the statement of the president of the company that the accounts of an employee were correct in every respect, purporting to be a statement made to the best of his knowledge and belief, would not, though untrue, relieve the surety company from liability. In *Towle* v. *National Guardian Assurance Co.*, 3 Giff. 42, it was held that there should be a recovery on the policy on the ground that the alleged false representations had been shown to have been fairly and honestly made and to have been substantially correct. The plaintiff also refers to the case of *Sweeney* v. *Met. Life Ins. Co.*, 19 R. I. 171, as recognizing the doctrine that statements in a policy which by their nature cannot lie wholly within the knowledge of the insured are not to be taken as warranties, but the court simply mentions that

question as one which need not be decided in that case.   In
the case of *Atlas Bank* v. *Brownell et al.*, 9 R. I. 168, the
sureties on a cashier's bond sought to avoid liability on the
ground that the directors had failed to inform them relative
to the personal habits of the cashier without any inquiry on
the part of the sureties.   The court held that the mere
giving and accepting of the surety bond was not a relation
sufficiently confidential to impose upon the directors that
duty.   In *Jerrett* v. *John Hancock Mut. Life Ins. Co.*, 18
R. I. 754, it was held that when the policy expressly made the
application a part thereof and it was also stipulated therein
that if the statements or answers in the application were
in any respect untrue the policy should be void, an answer
given by the applicant that no members of his immediate
family had died of consumption, which answer the applicant
knew to be false, was sufficient to avoid the policy.

None of these cases have any bearing upon the questions
arising under the special provisions contained in the contract
here making it incumbent upon the plaintiff to perform
certain duties which it is agreed are material to the contract.
None of them support the contention of the plaintiff that
the statements in its application and the provisions of the
contract are not warranties or that they are not statements
upon which the contract was based.

The plaintiff also cites other cases which may demand a
more extended discussion and consideration.

In *Remington* v. *Fidelity and Deposit Co.*, 27 Wash. 429,
the plaintiff employed one Bishop as cashier and bookkeeper
and required him to give a bond against dishonesty which
was furnished by the defendant for the term of one year.   At
the expiration of that period the bond was renewed upon the
certificate of the plaintiff that the accounts of Bishop had
been examined and found to be correct in every respect and
that all moneys had been accounted for.   At the time this
certificate was given Bishop had embezzled certain funds
belonging to the plaintiff.   It appeared from the evidence
that during the time of Bishop's employment regular

.monthly examinations of his accounts were made in accordance with the agreement of the plaintiff, the last examination having been made four days prior to the date of the certificate which led to the renewal of the bond, and that such examination was of the same character as the former examinations; that at the time of making the certificate the plaintiff had no knowledge or suspicion of any default; that he had no means of determining there was any default on the part of Bishop, without an expert examination of all his accounts and transactions, which would require an expert bookkeeper, and which the plaintiff himself was not competent to make; and that the certificate appeared to be made in good faith and without any fault on the part of the plaintiff. The court held that under these circumstances the certificate was a representation of a fact and not a warranty. This case is not only widely different in its circumstances from the case at bar, but the contract failed to specify any method of examination which the plaintiff omitted and which would have been certain to have detected the embezzlement. In the case of *American Bonding Co.* v. *Spokane Building & Loan Soc.*, 130 Fed. 737, it was held (1) that where it was provided by statute that all corporate management should be vested in a board of trustees and the application for fidelity insurance stated that the secretary insured derived his authority from the board of trustees, knowledge on the part of a single officer, trustee or the president of the association that the secretary was indebted to it at the time the policy was issued could not be imputed to the corporation without proof that the officer's knowledge had been communicated to the board, and (2) that where the bond provided that all representations made by the employer to the surety were warranted by the employer to be true and that the employee had not, to the knowledge of the employer or its officers, been in arrears or a defaulter, such statement did not constitute a warranty, but only that he was not indebted to the association to the knowledge of the association or its officers.

In *Phœnix Assurance Co. of London* v. *Munger Improved Cotton Machine Mfg. Co.*, 92 Tex. 297, the gist of the decision is that the erroneous statements of the insured as to immaterial matters will not be held to be warranties, and that the contract should not be construed as evidencing the intention of the parties to make the policy wholly inoperative in case either of the statements made should not be literally true, where there is ground for the construction that they did not intend such a result to follow, in the event that the statement should be untrue in some immaterial particular.

The case of the *Ætna Ins. Co.* v. *Simmons*, 49 Neb. 811, is to the effect that an overestimate by the insured as to the value of his property, unless shown to have been fraudulently made, or a misstatement as to matters not material to the risk will not be considered as warranties to the avoidance of the policy.

We do not find from an examination of all the cases cited by the plaintiff that there is any clear or substantial authority sustaining the position which it takes. The great weight of authority seems to us to sustain the action of the trial court in directing a verdict for the defendant.

In *Sweeney* v. *Met. Life Ins. Co.*, 19 R. I. 171, the answers and statements in the printed and written applications for the policies were made a part of the contract by the terms of the policies issued by the defendant; the applicant declared and warranted that the representations and answers made were strictly correct and wholly true; that they should form the basis and become part of the contract of insurance; and that any untrue answer would render the policy void. The court said that "the above provisions constitute a warranty of the truth of the statements in the application, so far as they rest upon the applicant's own knowledge, is beyond question."

In *Glidden* v. *U. S. Fidelity & Guaranty Co.*, 198 Mass. 109, the defendant issued its bond insuring the honesty of one Sutherland, a clerk. At the time the bond was issued Sutherland was short in his accounts though the fact was

unknown to the plaintiff. The bond was issued upon the faith of certain statements in writing made by the plaintiff which were material to the defendant's undertaking, including the statement that upon an examination, made about a week previous to the issuing of the bond, Sutherland's accounts had been found correct in every respect, and that he was not in arrears. The Superior Court directed a verdict for the defendant, and the Supreme Court upon consideration of that action said: "Manifestly the plaintiff's statement that he had examined Sutherland's accounts on October 31, 1900, a week before the date of the defendant's bond, and found them correct in every respect up to that date, was material to the defendant's undertaking. It bore directly upon the nature and extent of the risk which the defendant agreed to bear; and if, in fact, this representation was false, whether intentionally or from honest mistake on the part of the plaintiff, it plainly increased the risk, and the plaintiff could not hold the defendant to the agreement which it had made upon the faith of this statement among others. . . . There is no question made that Sutherland was at this time a defaulter to a large amount, and that a proper examination of his accounts would have disclosed the fact. Under these circumstances, it was the right of the defendant to have a verdict ordered in its favor."

In *Guarantee Co.* v. *National Bank*, 95 Va. 480, the plea alleged that the Guarantee Company was induced to execute the bond as surety for one Hamner as teller of the bank, by the positive representation in writing made to it by the bank that Hamner was never in arrear or default to the bank; that his books and accounts, including cash, securities and vouchers, were last examined in December, 1893, by a committee of the bank's directors; that they were found to be correct. The plea further stated that but for these representations, it would not have executed the bond, and also stated that these representations were false; that Hamner was at that time, and had been for a long period prior thereto,

a defaulter and largely in arrears to the bank, and that if a proper examination of his books and accounts had been made in December, 1893, the defalcation would have been discovered. The Supreme Court of Virginia in deciding this case said: "These alleged representations were of existing facts, were material, and presumably within the peculiar knowledge of the bank and its officers, and constituted an inducement to the Guarantee Company, on which it had the right to rely, to execute the bond. It was immaterial whether the plaintiff knew that they were false, or honestly believed them to be true. If a party innocently misrepresents a material fact by mistake, the effect is the same on the party who is misled by it as if he who innocently made the misrepresentation knew it to be positively false. The real question in such a case is not what the party making the representation knew or believed, but was the representation false, and the other party misled by it."

In *Warren Deposit Bank* v. *Fidelity & Deposit Co.*, 116 Ky. 38, the bond was issued to protect the plaintiff against the pecuniary loss of one Porter. The employer's statement contained the following: "It is agreed that the above answers are to be taken as conditions precedent and as the basis of the said bond applied for, or any renewal or continuance of the same that may be issued by the Fidelity & Deposit Company of Maryland to the undersigned upon the person above named." This statement of the plaintiff declared Porter had uniformly given satisfaction in his personal conduct and habits; that his accounts were correctly kept and that he had made proper statements of all cash and securities entrusted to his care; that his books and accounts, including cash, securities and vouchers, were last inspected and examined by the board of directors on September 6, 1899 (shortly before the bond was issued); that they were at that time correct and proper, and that there were securities and funds on hand to balance. These statements were false, and Porter was at the time a defaulter to the extent of about $30,000. The plaintiff made the statements in good faith,

not knowing of Porter's dishonesty. The Supreme Court of Virginia declared that the falsity of these statements was fatal to an action upon the bond—"That these misrepresentations were material to the risk in this case, there can be no manner of doubt; that they were indisputably false is equally clear. Whether they were fraudulent, or not, is not, therefore, particularly material."

*U. S. Fidelity and Guaranty Co.* v. *Downey,* 38 Colo. 414, was an action brought to recover $1,000 with interest upon an indemnity bond executed by the Guaranty Company in favor of Ouray Miner's Union, No. 15, Western Federation of Miners. It was given to secure the faithful discharge of duty by one John M. Hogue, secretary-treasurer of the union. In the application made for the bond, among other representations, the following appear: "Q. How often will his books and accounts be examined and verified with funds and property on hand and in bank? A. Every three months. Q. By whom will this be done? A. By the board of directors—three persons.

"The foregoing answers, statements and representations are hereby warranted to be true and correct, and it is hereby agreed on behalf of this body, or association, in consideration of the execution of said bond, that throughout the continuance thereof, the checks and supervisions above described shall be faithfully observed, and that the business of said body, or association, shall continue to be managed and conducted as above set forth. The above answers, statements and representations are to be considered warranties and they shall form the basis of the guaranty hereby applied for." No proper verification of Hogue's accounts by comparing them with the money in bank was ever made. The court said: "Nothing of this nature was done or attempted to be done by the trustees, so that there was an absolute breach of the contract made by the union which was the inducement offered defendant for making the bond. The union having failed to do that which it was compelled to do under its agreement, released the appellant from all

liability under the bond. . . . In the bond it is expressly asserted by the obligor that the answers to these questions were deemed material.   As we have seen, they were material to the risk as a matter of fact, and, as a matter of law, the obligor relied upon them, and had the right to rely upon them, and presumably the company would not have issued the policy had the obligee not made the answers as it did.   In any event, whether the bond would have been entered into under other or different circumstances or not, is immaterial.   The plaintiff accepted this bond under these conditions and under the agreement to do that which it failed to do, and as a consequence, could not recover."

In *Rice* v. *Fidelity & Deposit Co.*, 103 Fed. 427, the bond was for the term of one year and was by renewals extended to three years and was given to secure the honesty of one Walter J. Perry, in the employ of the plaintiff.   The plaintiff claimed that from September 27, 1895, to July 25, 1898, Perry had been guilty of numerous acts of dishonesty against which the bond promised indemnity.   These acts consisted chiefly in the drawing of funds by Perry from the bank and the misappropriation of the funds so withdrawn.   The defendant pleaded that the plaintiff had agreed that all checks drawn by Perry on their account should be countersigned by their bookkeeper, John W. Gribble, and that they had entirely failed to keep this stipulation of their contract. The plaintiff contended that the statement that said checks should be countersigned was a representation and not a warranty, and hence, a failure to comply with it was no defence to the action unless the statement was not only false, but fraudulent and material to the risk.   The contract contained the statement:   "It is agreed that the above answers are to be taken as conditions precedent and as the basis of the said bond applied for, or any renewal or continuation of the same."   The bond was delivered before any acts of fraud had been committed by Perry.   It contained this clause:   "Whereas, the employer has deliverd to the Fidelity & Deposit Co. of Maryland,   .   .   .   a state-

ment in writing relative to the duties, responsibilities and check to be used upon the employee in said position and other matters:  Now, therefore, in consideration of the sum of one hundred dollars  .  .  .  and upon the faith of the said statement as aforesaid by the employer, it is hereby agreed and declared that the company will indemnify the obligees on certain conditions named in the bond."   The court said:  "A written statement made by employers to the obligor in a bond of indemnity against the dishonest acts · of their employee to the effect that they will invariably apply certain checks to his action, which the parties expressly agree, by the statement itself and by the bond, shall be the basis of the latter, and condition precedent to a recovery upon it, is of the nature of a warranty and not of a representation, and a failure to comply with the promise it contains is fatal to an action upon the bond."

In *Hunt* v. *Fidelity & Casualty Co.*, 99 Fed. 242, the court directed a verdict for the defendant.  The action was brought upon a policy of insurance issued by the defendant to the People's Fire Insurance Company of Manchester, N. H., to indemnify it against loss which might occur through the embezzlement of one Kingman.  The policy was issued upon a declaration signed by the assured, containing statements in the form of answers to questions relative to the subject-matter of the policy.  The statements were, by the terms of the policy, to "constitute an essential part and form the basis of the contract."  It was also stated that the answers were true to the best of the knowledge and belief of ·the assured, and were to be taken as the basis of the contract between the insurer and the assured.  Among such statements, it appeared that the assured represented that money would come to Kingman's hands in the regular course of business for transmission to the company; that the largest sum he would hold at any one time would be two months' premiums, which would be paid to the assured's representative; that said moneys would be deposited in bank as collected and that Kingman's accounts would be

compared and verified with cash and vouchers every month. The defendant alleged that the above statements were false and untrue, and that the promises and agreements made by the assured were not fulfilled.   The assured did not, at any time, compare and verify the cash in its agent's hands, or his bank balance, with the accounts and vouchers kept by him.   The court said:   "The promissory statement having been made a part of the contract between the parties, by the terms both of the policy and the declaration, was, in effect, a warranty which the assured was bound to fulfill in substance and according to its meaning.   .   .   .   It is quite immaterial that the statement is not called a warranty. It is a stipulation embodied in the contract by the words of the policy, for the performance of future acts, and as such, it is an express warranty.   Undoubtedly, the language in the declaration that the answers were true to the best of the knowledge and belief of the assured, qualifies the effect of several of the warranties, restraining them to a breach of such representations as were not honestly made by the assured.   Several of the statements were in respect to facts existing at the time or previously.   As to those, the assured did not stipulate unconditionally.   But the language has no reference to the warranties for the performance of subsequent acts, because as applied to them, it would be meaningless.   .   .   .   In ruling that the promise of the assured had not been fulfilled, and that the defendant, was therefore, entitled to a verdict, the court below was entirely correct."

In *Guarantee Co.* v. *Mechanics Savings Bank*, 183 U. S. 402, the bank, in seeking to recover on a bond, undertook to argue that if the bond were susceptible of two constructions, one favorable to the bank and the other favorable to the surety company, the former, if consistent with the objects for which the bond was given, must be adopted, for the reason that the instrument was drawn by the attorneys and agents of the surety company.   The Supreme Court of the United States, through Chief Justice Fuller, said: "But this rule can

not be availed of to refine away terms of a contract expressed with sufficient clearness to convey the plain meaning of the parties, and embodying requirements compliance with which is made the condition to liability thereon."

It seems to us unnecessary to refer to further cases of similar import in order to show the trend of authority in this country upon the questions at issue. As the court said in its opinion in *Jeffries* v. *Life Ins. Co.*, 22 Wall. 47, quoted with approval by this court in *Sweeney* v. *Met. Life Ins. Co.*, *supra*, "Many cases may be found which hold, that where false answers are made to inquiries which do not relate to the risk, the policy is not necessarily avoided unless they influenced the mind of the company, and that whether they are material is for the determination of the jury. But we know of no respectable authority which so holds, where it is expressly covenanted as a condition of liability that the statements and declarations made in the application are true, and when the truth of such statements forms the basis of the contract."

The statements made by the plaintiff were vital and material to the risk. They were the inducements which, operating upon the defendant, brought about on its part the execution of the contract. They were by the terms of the contract warranties. No surety company would ever consider the bonding of a defaulter or embezzler. The main facts in the case are covered by a written stipulation of the parties and by undisputed evidence. We think that there was no error on the part of the trial court in directing a verdict for the defendant.

The plaintiff took an exception to the ruling of the trial court refusing to permit the introduction of the statute of Massachusetts. The plaintiff offered the statute in evidence, claiming that the contract was made in Massachusetts and was therefore governed by the laws of that state and not by the laws of Rhode Island. The statute was excluded and an exception was taken.

The application for the bond appears to have been made through a resident agent of the defendant company and (2) the bond itself after having been prepared at the home office of the company in Massachusetts was transmitted by mail to the agent here who was empowered to deliver or withhold it in his discretion. We think that the statute was properly excluded on the ground that the contract was made in Rhode Island.

The plaintiff also excepted to the admission of testimony to the effect that the defendant company has more than one form of bond which it issues upon applications like the one made by the plaintiff. This testimony does not seem to us to have any important bearing upon the questions which control the present case and need not be discussed.

The plaintiff's exceptions are all overruled and the case is remitted to the Superior Court with direction to enter judgment for the defendant on the verdict.

*John H. Slattery, John L. Curran,* for plaintiff.
*Fitzgerald & Higgins,* for defendant.