[No. 14061. Department One. — January 20, 1892.]

## PACIFIC FIRE INSURANCE COMPANY OF NEW YORK, RESPONDENT, *v.* PACIFIC SURETY COMPANY, APPELLANT.

INDEMNITY BOND — FRAUD OR DISHONESTY OF EMPLOYEE — NOTICE TO SURETY COMPANY — LACHES CONSISTENT WITH INTEGRITY. — In a bond of a surety company guaranteeing the payment of all losses suffered by an employer through the fraud or dishonesty of his employee, a provision that the employer is to notify the surety " of any act of omission or commission on the part of the employee which might involve a loss for which the company is responsible hereunder " does not render it necessary that the employer notify the company of every act of laches or delay or inefficiency on the part of the employee which ultimately may create a loss to the employer, but only that the company be notified of acts which may create a loss for which it is responsible; that is, a loss arising from fraud or dishonesty. Mere laches or inefficiency of the employee in the business, which is consistent with integrity, is not required to be communicated.

ID. — TARDINESS OF INSURANCE AGENTS — NOTICE OF DELAY — SUBSTANTIAL COMPLIANCE WITH CONTRACT — CONDITION OF BOND. — Where such condition was contained in a bond of indemnity of a surety company given to an insurance company, indemnifying the latter against acts

of fraud or dishonesty upon the part of its general agents, and the contract between the general agents and the insurance company, which had its office in a distant state, required the agents to remit the money collected for any one month within fifty days from the end of such month, but the agents failed to remit such money until from sixty to one hundred days after the end of such month, partly because of the tardiness of their subagents to collect and remit to them, and partly because of their own tardiness and neglect, but without any wrongful or fraudulent intent on their part, which action the company acquiesced in as a substantial compliance with their contract, the failure of the company to give notice to the surety company of such delay is not a substantial violation of the condition of the bond.

ID. — FRAUDULENT REPRESENTATION — CERTIFICATE OF NON-ARREARS — EXTENSION OF TIME FOR COLLECTIONS. — A certificate furnished by the insurance company to the surety company, at the request of the latter, stating that the agent was not in arrears or default, and never had been to its knowledge, was not fraudulent, although at the time the certificate was made the premiums due the day previous had not been paid, and although payment of premiums had been delayed before from ten to seventy days, where the acts of the agent were treated as a substantial compliance by the insurance company with the terms of the contract, and the delay was not attributable to dishonesty or lack of integrity of the agent, but to the wide field of the agency and the difficulty in making collections, the time for the return of which had been practically waived and extended by the company.

APPEAL from a judgment of the Superior Court of Santa Clara County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*William H. Jordan*, for Appellant.

The plaintiff and its agents conspired together and fraudulently concealed from the defendant the fact that the plaintiff's employees had, prior to the issuance of the bond, been in arrears and default to the plaintiff, and thus fraudulently induced the defendant to become responsible for the fidelity of the employees who were known by the plaintiff to be untrustworthy, and therefore the plaintiff cannot recover. (*Swoy* v. *State*, 39 N. J. L. 144, 145, 147; *McKecknie* v. *Ward*, 58 N. Y. 550, 551, 553; 17 Am. Rep. 281; Story's Eq. Jur., secs. 214, 215, 324, 383; *Atlas Bank* v. *Bromwell*, 9 R. I. 169; 11 Am. Rep. 231; Baylies on Sureties, 216; *Lee* v. *Jones*, 14 Com. B., N. S., 322; Pomeroy's Eq. Jur., sec. 907; *Frank-*

*lin Bank* v. *Cooper*, 36 Me. 179; *Phillips* v. *Foxhall*, L. R. 7 Q. B. 666; *Roberts* v. *Donovan*, 70 Cal. 110.)

*James Alva Watt*, and *Bishop & Watt*, for Respondent.

The defendant is liable, under its bond, for the fraud and dishonesty of the employees of plaintiff. The delays in the remittances were perfectly consistent with honesty and integrity on the part of the employees, so far as the plaintiff knew or had reason to know, and the defendant is not absolved from liability because of a failure of the plaintiff to communicate such delays to the defendant. (*Ætna Life Ins. Co.* v. *Am. Surety Co.*, 34 Fed. Rep. 291, 298, 299; *Charlotte etc. R. R. Co.* v. *Gow*, 59 Ga. 625; 27 Am. Rep. 403; *Watertown Fire Ins. Co.* v. *Simmons*, 131 Mass. 85; 41 Am. Rep. 196; *McKecknie* v. *Ward*, 58 N. Y. 541; 17 Am. Rep. 281; *Atlantic and Pac. Tel. Co.* v. *Barnes*, 64 N. Y. 385; 21 Am. Rep. 621.)

Garoutte, J. — Plaintiff is a fire insurance company having its office in the city of New York. Defendant is a corporation organized for the purpose of issuing indemnifying bonds to employers, guaranteeing the honesty of employees occupying positions of trust. Smith & Moody were the general agents for plaintiff in the state of California, with an office in the city of San Francisco. Upon October 21, 1885, defendant issued its bond to plaintiff, guaranteeing the payment of all losses suffered by plaintiff through the fraud and dishonesty of its agents, Smith & Moody, and this bond was renewed for the year ending October 31, 1887. In March, 1887, Smith & Moody failed in business, and at that time were indebted to plaintiff in the sum of $2,819.25, moneys collected by them as agents of plaintiff, which amount they converted to their own use, and this action is brought to recover from the agents and their surety, the appellant herein, the amount of such defalcation. Judgment went for the plaintiff in the lower court, and this is an appeal by the defendant surety company from the judgment and order denying a new trial.

The trial court substantially found, among other matters, that the contract of employment entered into between plaintiff and its agents provided that accounts should be rendered by said agents to the plaintiff in New York by the fifteenth day of each month of the business done during the preceding month, and the premiums paid over to the company (plaintiff) by the twentieth day of the second month thereafter; that this provision of the contract was ambiguous, but that both parties understood it to mean that the moneys collected for the business of any given month should be paid to plaintiff on or before the twentieth day of the second month thereafter; that the agents made their reports as required by the contract, and until the time of their defalcation remitted the sums shown by their statements to be due from sixty to one hundred and twenty days after the end of the month during which said business was so transacted; that the delays in remitting the money resulted in part from the tardiness of subagents to properly collect and remit to them, and in part from their own negligence, but without any wrongful or fraudulent intent on their part, and that said delays were acquiesced in without objection on the part of plaintiff, and treated by both plaintiff and the said agents as a substantial compliance with their agreement in relation to such remittances; that on October 9, 1885, Smith & Moody made written applications to the defendant for a bond of indemnity to the plaintiff against acts of fraud or dishonesty upon their part; that in said applications they answered "No" to the following questions: "Have you ever been in arrears or default in your present or previous employment?" that attached to these applications was an employer's certificate, signed by the secretary of plaintiff in its behalf, which stated, "I have read the foregoing declarations and answers made by Charles E. Moody (A. D. Smith), and believe them to be true. He has been in the employ of the company during one year, and, to the best of my knowledge, has always performed his duties in a faithful and satisfactory manner. His

accounts were last examined on the twenty-first day of October, 1885, and found to be correct in every respect. He is not, to my knowledge, at present in arrears or default." It appears that the indemnifying bond issued in October, 1885, was in part based upon this employer's certificate, and the extension of the bond for the second year was based in part upon an employer's second certificate, containing, substantially, the matters set out in the one of the preceding year. It was provided in the bond that plaintiff should notify the surety company, in writing, properly addressed, " of any act of omission or commission on the part of the employees which might involve a loss for which the company is responsible hereunder, as soon as practicable after the occurrence of such act shall have come to the knowledge of the employer."

It is conceded that plaintiff's agents defaulted in a large sum of money during the life of the bond given by appellant, but, to defeat a recovery, appellant insists that the evidence establishes the fact that the bond was obtained by reason of false and fraudulent representations made by the plaintiff, and also that after its delivery, plaintiff's agents were guilty of making many defaults in the settlement of their accounts, to the knowledge of plaintiff, and plaintiff failed and neglected to notify appellant of such facts as required by the provision of the bond hereinbefore set out. There are preliminary objections made by respondent pertaining to the construction to be placed upon the bond, the order of renewal, employer's certificates, etc., that we will not pause to notice, but will examine the merits of the appeal upon the broad ground as above set forth by appellant.

Was the failure of plaintiff to give notice that Smith & Moody were not making their remittances at the time demanded by the contract a substantial violation of that condition of the bond wherein plaintiff agreed to notify appellant " of any act of omission or commission on the part of the employees that might involve a loss for which the company is responsible hereunder " ?

While the plaintiff had notice that its agents were not forwarding collections at the times required by the provisions of its contract, yet the trial court found " said delays resulted in part from the tardiness of subagents to properly collect and remit to said general agents, and in part from the negligence of said general agents, but without any wrongful or fraudulent intent on their part, and that said delays were acquiesced in without objection on the part of plaintiff's officers, and treated by both plaintiff and said agents as a substantial compliance with their agreement in relation to such remittances." In the face of the facts set out in this finding, it cannot be said that plaintiff was guilty of a violation of the covenant of the bond. Plaintiff considered the acts of its agents a substantial compliance with the terms of the contract; and under the evidence it would seem that, as a careful, prudent business corporation, it was justified in so doing. The explanations and reasons for the delay were entirely consistent with honesty and fair dealing. As a fact, the court found that such delays were occasioned by no wrongful or fraudulent intent of the agents. Under these conditions, there was no act of " omission or commission" upon the part of the agents requiring notice to appellant. This identical provision of a similar bond was construed in the case of *Ætna Life Ins. Co.* v. *American Surety Co.*, 34 Fed. Rep. 298, and the court there said: " It cannot be supposed that this provision calls upon the employer to notify the defendant of every act of laches, or delay, or inefficiency on the part of the agent which ultimately may create a loss to the employer. It means that the defendant shall be notified of acts which may create a loss for which it is responsible; that is, a loss arising from fraud or dishonesty. It is not necessary to undertake to define affirmatively what kind or class of acts must be communicated, and whether or not the obligation compels the employer to notify the defendant of that kind of conduct of the employee outside of his business which experience has shown may probably result in dishonesty. It is suffi-

cient to say, that mere laches or inefficiency of the em-
ployee in the business, which is consistent with integrity,
was not required to be communicated." Measured by
the rule laid down in the foregoing authority, it is entirely
apparent that in this case, as the facts existed, plaintiff
was not called upon, under the covenant of the bond, to
give any notice to appellant. It is the business of the
surety to see that his principal keeps within the guar-
anty of the bond, and not that of the employer. The em-
ployer is not called upon to be watchful and diligent in
order that the surety may suffer no loss. There is no
question but that a correct principle of law is declared
in *Roberts* v. *Donovan*, 70 Cal. 110, and other cases cited
by appellant, viz., that "if a master discover that the
servant has been guilty of dishonesty in the course of
the service, and instead of dismissing, continues him in
such service without the knowledge or consent of the
guarantor, express or implied, he cannot afterward have
recourse to the guarantor to make good any loss which
may arise from the dishonesty of the servant during the
subsequent service"; but the principle is not applicable
here, for there is no question of dishonesty involved in
these delays of the agents to make the remittances, and
the court so found. In the case of *Watertown Fire Ins.
Co.* v. *Simmons*, 131 Mass. 84, 41 Am. Rep. 196, the plain-
tiff did not notify the sureties of his agent's default until
after his death, and the defendants contended that they
were discharged from their liability as sureties by these
facts. After a review of the authorities bearing upon
the question, there being no fraud or dishonesty shown,
but simply a default or arrearage in the payment of the
monthly collections of money, the court said: "We are
of opinion that there is no rule of law which makes it a
duty which the creditor, under the circumstances of this
case, owes to the surety either to dismiss its agent or to
notify the surety of his default." (See also *McKecknie* v.
*Ward*, 58 N. Y. 541; 17 Am. Rep. 281.)

There is no evidence whatever in the record to sup-
port the allegation of the answer that the statements of

the plaintiff contained in the certificates were made in pursuance of a conspiracy with its agents to defraud appellant. Let us consider these statements made by plaintiff in the renewal certificate, and also those found in the original certificate, such certificate being made a part of the said renewal, and forming, as it is claimed by appellant, a part consideration for the issuance of this bond, and see if they are so far from the truth as to justify a reversal of the judgment. Upon this subject the court found "that the plaintiff, during said time [time of agency], believed said agents to be honest, and made the several statements and certificates hereinbefore referred to in good faith, believing them to be true, and without any intent to mislead or deceive the defendant company." Upon October 21, 1885, the secretary of the plaintiff, in its behalf, in the certificate to appellant, said: "He [referring to the agent separately] is not, to my knowledge, at present in arrears or default." While the terms of the contract were ambiguous with reference to the time when payments should be made, yet the court found that they were payable on or before the twentieth day of the month, and it appears that upon the 21st of October, when the statement was made, an amount of money was due and payable to plaintiff by its agents upon October 20th. Plaintiff resided in New York, and the agents resided in San Francisco, and from that fact alone, taking into consideration the uncertainties of prompt communication for such a distance, to impute anything but fairness and honesty to the plaintiff in making the statement that upon October 21st the agents were not in default or arrears, would not be justified by the circumstances. Appellant attacks the statement found in the certificate, that these agents had always performed their duties in a faithful and satisfactory manner. Upon this matter the court found that "the dealings by and between said Smith & Moody as such agents, and the plaintiff, from the commencement of the employment to within a short time before the withdrawal from such employment, were fair and honest, and in accordance

with the usual course of business conducted by insurance agents in general." This finding, and other findings of the court already quoted, have ample support in the evidence, and dispose of appellant's contention in this regard.

With reference to the quotations from the certificates of plaintiff already noticed, and others of which appellant complains as being false and misleading, we find no just cause for complaint. It appears that Smith & Moody, during the period of their agency, had failed to make their remittances at the time demanded by the terms of the contract, but had made them within a reasonable and satisfactory time thereafter, and were conducting the business in the ordinary and regular way. It further appears that their delay in forwarding remittances was not attributable to dishonesty or lack of integrity, but was due to the wide field covered by the agency, and their inability to make collections. The plaintiff had knowledge of these facts, and recognized and treated its agents' acts, with the agents' knowledge, as a substantial compliance with the terms of the contract. Plaintiff certainly had the right to, and did practically, waive that provision of the contract, and extend the time in which its agents were entitled to forward these remittances. Under such circumstances, can it be said that the agents were in default or arrearage at any time, unless by failure to remit upon demand of plaintiff? It could only be a default under a provision of the contract,—a provision which was waived, and thus such a technical, unsubstantial default, that it could never have served any purpose in the final determination by appellant as to the issuance or non-issuance of the bond of guaranty. The default or arrearage referred to in these certificates would seem to be such defaults and arrearages as would, to some extent at least, indicate dishonesty or want of integrity upon the part of the agents, and not such as were wholly innocent in themselves, and which might result to the most careful and honest of men.

We have examined the errors of law relied upon by appellant, and do not consider them well taken.

Let the judgment and order be affirmed.

Paterson, J., and Harrison, J., concurred.

Hearing in Bank denied.