THE GUTHRIE NATIONAL BANK, a *Corporation*, v. FIDELITY AND DEPOSIT COMPANY, OF MARYLAND.

(Filed September 3, 1904.)

INDEMNITY BOND—Warranties, What Are Not. Statements and representations made to an indemnity company for the purpose of inducing said company to execute a bond for hire guaranteeing the faithful discharge of the duties of an employe, will not be construed to be warranties unless the language used is not capable of any other interpretation.

(Syllabus by the Court.)

*Error from the District Court of Logan County; before Jno. H. Burford, Trial Judge.*

*Dale & Bierer,* for plaintiff in error.

*Charles R. Miller* and *Lawrence & Huston,* for defendant in error.

Opinion of the court by

BURWELL, J.: W. T. Phillips was employed by the Guthrie National Bank as bookkeeper, and for the purpose of inducing the Fidelity & Deposit Company to guarantee the faithful discharge of his duties, its president answered certain questions, and these questions, and the answers thereto, being in writing, were to be deemed the basis for the bond. And the question here presented is, are these answers to be construed as mere representations, or are they absolute warranties? We will consider but three of these questions. They are as follows:

Question. "Has he (Phillips) kept his accounts correctly and made proper settlements for all cash and securities entrusted to his care?"

Answer. "Yes."

Question. "At what date and by whom were applicant's books and accounts, (including cash, securities and vouchers, if any) last inspected and examined?"

Answer. "November 15, 1899, by McDonald."

Question. "Were they at the time in every respect correct, and proper securities on hand to balance?"

Answer. "Yes."

These answers were made in good faith by the president of the bank, but the real fact was that Phillips, at that very time, was short with the bank some $470.00, for funds which he had embezzled. The questions were printed on

a blank furnished by the defendant company, and at the top of the blank is a provision that "the company desires to have answers to the following questions, and these answers will be taken as the basis of the bond, if issued." And then the last provision in this same instrument is as follows:

"It is agreed that the above answers are to be taken as conditions precedent and as the basis of the said bond applied for, or any renewal or continuation of the same that may be issued by the Fidelity and Deposit Company of Maryland to the undersigned upon the person above named." And the bond itself provides:

"Whereas the Guthrie National Bank, Guthrie, O. T., hereafter called the 'employer,' is employing or intends to employ certain persons in the capacity of president, cashier, bookkeeper, etc., (as per schedule attached), which persons are hereafter called the 'employes,' and has filed with the Fidelity and Deposit Company, of Maryland, hereinafter called the 'company,' certain statements and declarations in writing, relative to the duties and accounts of said employes, which, together with any statements or declarations in writing, made by the employer, and required by or lodged with the company, do and shall constitute the basis of this contract, or any continuation thereof."

The learned trial court held that the different provisions made the answers given by the president of the bank absolute warranties, and counsel for the defendant have cited a long list of cases (all of which we have examined) to support this position; but we are fully persuaded that the answers referred to were merely representations, and that the liability of the company does not depend upon the absolute truth of such answers. The defendant company in this case occupies the same relation to the plaintiff that an insurance company does to an insured person, and the bond in question

will be measured by the same rules applicable to an insurance policy. And it is a settled rule that courts will not interpret such statements and representations to be warranties unless the language is capable of no other construction; and on the trial of the case below, if the defendant sought to take advantage of the untruthfulness of the answers, it should have pleaded and proven, not only that the answers were not true, but that the president of the bank knew or, in the light of all of the facts and circumstances, ought reasonably to have known, that they were false. This view of the law is supported by able authority.

In the case of *Dunbar Price and another v. Phoenix Mutual Life Insurance Company,* 17 Minn. 473, it is said:

"A policy of life insurance contained a provision that ' if any of the declarations or statements made in the application for this policy, upon the faith of which this policy is issued, shall be found in any respect untrue, then and in every such case, the policy shall be null and void.' The application contained the following language: 'It is hereby declared that the above are fair and true answers to the foregoing questions, and it is acknowledged and agreed by the undersigned that the application shall form the basis of the contract for insurance, and that any untrue or fraudulent answers, any suppression of facts or neglect to pay the premium on or before the day it becomes due, shall and will render the policy null and void, and forfeit all payments made thereon.'

"*Held,* That the answers are representations, not warranties, and therefore their untruth (if untrue) is a matter of defense to be pleaded and proved by the defendant." (Citing authorities).

And the supreme court of Kansas, in the case of *Northwestern Mutual Life Insurance Company v. Woods,* 39 Pac.

189, states the rule ever more favorably to the plaintiff than that quoted from the Minnesota court.

The case of *Moulor v. American Life Insurance Company*, 111 U. S. 335, is in point. The application contained the following provisions:

"It is hereby declared and warranted that the above are fair and true answers to the foregoing questions; and it is acknowledged and agreed by the undersigned that this application shall form part of the contract of insurance, and that if there be in any of the answers herein made, any untrue or evasive statements, or any misrepresentations or concealment of facts, then any policy granted upon the application shall be null and void, and all judgments made thereon shall be forfeited to the company.

"And it is further agreed that if at any time hereafter the company shall discover that any of said answers or statements are untrue or evasive, or that there has been any concealment of facts then, and in every such case, the company may refuse to receive further premiums on any policy so granted upon this application, and said policy shall be null and void, and payments forfeited as aforesaid."

The language used in these contracts is very much stronger than the provision of the contracts in the case we are now considering; but, notwithstanding the almost positive stipulation, Justice Harlan said:

"There is, to say the least, ground for serious doubt as to whether the company intended to require and the insured intended to promise an exact, literal fulfillment of all the declarations embodied in the application * * *. The doubt as to the intention of the parties must, according to the settled doctrines of the law of insurance recognized in all the adjudicated cases, be resolved against the party whose language it becomes necessary to interpret. The construction must therefore prevail which protects the insured against the obligation arising from a strict warranty."

See also *Phoenix Life Insurance Co. v. Raddier*, 120 U. S. 183.

It is said that if the answers of the president of the bank had stated the truth, the company would not have executed the bond. This is undoubtedly true, but it is also equally true that if he had actually known the facts he would not have paid the company the premium for the bond,—he would not have employed Phillips at all. The purpose of asking the questions was to find what others, and particularly his employer, knew about him. It is true that the bank could have discovered Phillips' shortage if it had checked up the books of the banks with that object in view; but the suspicions of the officers of the bank had never been aroused. The books were checked up in the ordinary course of business, as such books usually are, and the bank had a right to assume that his accounts were kept correctly, in the absence of some fact tending to arouse suspicion that would be sufficient to put it upon enquiry. The company, it is true, as was said in the oral argument of this case, intended to bond an honest man, and it used the means at command to satisfy itself of the honesty of Phillips before executing the bond; but the bank, as far as the record shows, gave the company all of the information it had, and paid it for the assumption of the risk; and now, loss having been sustained, the company will not be relieved on the ground that the answers are warranties, in the absence of express provisions fixing them as such.

The trial court ought not to have taken the case away from the jury.

For the reasons herein stated, the judgment of the lower court is hereby reversed at the cost of the appellee, and the

Vol. 14—41

case remanded for a new trial, in conformity with the views herein expressed.

Burford, C. J., who presided in the court below, not sitting; Pancoast, J., absent; all the other Justices concurring.