## SOUTHERN SURETY CO. v. TYLER & SIMPSON CO.

No. 1163.   Opinion Filed November 14, 1911.

(120 Pac. 936.)

1.    INSURANCE—Forfeiture—Fidelity Bond. Where a surety company issued a bond indemnifying a mercantile establishment against the default of its bookkeeper, who was authorized to handle daily cash receipts, and the bond executed, including a separate instrument known as "Employer's Statement," warranted that the books would be balanced monthly and the accounts watched and looked after, a monthly examination of the statements, reports, and books by the officers of the insured, but which did not include a complete and thorough check or audit of the books, is sufficient, and the fact that a careful audit of the books would have disclosed a defalcation, is not proof that

there was a failure in the performance of a duty, such as would release the surety from its obligation.

2.   SAME—Forfeiture—Fidelity Bond.  A surety company issued a fidelity bond, indemnifying a mercantile establishment against the default of its bookkeeper, which, in compliance with a provision of the bond, answered certain questions, as follows:   "Q. What means will you use to ascertain whether his accounts are correct? A. Monthly balances and watching them.   Q. How frequently will they be examined?   A. (No answer.)   Q. When were his accounts last examined?   A. Each account is examined, monthly. Q. Is there now, or has there been, any shortage due you by applicant?   A. No; not that we know of.   Q. Have you ever sustained loss through the dishonesty of any one holding the position of the applicant?   A. Yes.   Q. If so, state what means you have adopted to prevent the recurrence of similar loss.   A. By a more careful scrutiny of accounts."   Held, that a monthly examination of the books and accounts and reports made by the bookkeeper by the officers of the insured, together with keeping such watch on the bookkeeper as was kept on the other employees of the insured, and a general supervision by such officers over the business of the bookkeeper such as was usual and customary, was all that was required by the terms of the undertaking.

3.   SAME—Forfeiture—Fidelity Bond.  The foregoing questions and answers cannot be construed to mean that an exhaustive examination of the books had been or should be made, such as would discover the slightest irregularity that might exist, however cunningly covered up.

4.   SAME—Forfeiture—Fidelity Bond.  The fact that the question, "Is there now, or has there been, any shortage due you by applicant?" was answered, "No; not that we know of," and which answer was made in good faith after the usual and customary examination of the books, but which failed to discover existing defalcations, will not discharge the surety, no false representations or warranty having been made, and the insurer having accepted the statement so made without request for further or more definite information.

5.   INSURANCE—Actions on Policies—Burden of Proof.  Contracts of fidelity insurance will be liberally construed to accomplish the purpose of indemnity for which they are made, and, where the defense is a breach of the warranty by the insured, the burden of proof rests upon the insurer to establish the allegations charging such breach.

6.   SAME—Actions on Policies—Direction of Verdict.  In an action on a fidelity bond, the giving of the bond, the defalcation, and amount thereof were admitted, defendant claiming that the plaintiff had breached the warranties.   On this issue, the burden was on the defendant, and where the evidence given at the trial, with all the inferences that the jury would properly gather from it, was insufficient to support a verdict for the defendant, so that such a verdict, if returned, must be set aside, the court is

not bound to submit the case to the jury, but may direct a verdict for the plaintiff, providing his case has been properly made out.

(Syllabus by Sharp, C.)

*Error from District Court, Carter County; S. H. Russell, Judge.*

Action on a fidelity bond by the Tyler & Simpson Company against the Southern Surety Company. Judgment for plaintiff, and defendant brings error. Affirmed.

The Southern Surety Company, a corporation, organized under the laws of Oklahoma, and doing business in this state as a surety company, on January 1, 1908, executed to Tyler & Simpson Company, a Texas corporation, authorized to do business in this state, and engaged in the wholesale grocery business at Ardmore, a surety bond in the sum of $5,000, undertaking to indemnify said last-mentioned company against loss sustained on account of any fraud or dishonesty amounting to embezzlement or larceny committed by its bookkeeper, C. E. Carter, during a term of one year beginning January 1, 1908. The bond contained the following, among other stipulations:

"Whereas, the employer has heretofore delivered to the company certain representations and promises relative to the duties and accounts of the employee, and other matters, it is hereby understood and agreed that those representations and such promises, and any subsequent representation or promise of the employer, hereafter required by or lodged with the company, are hereby expressly warranted to be true."

In the month of February following, Tyler & Simpson Company, on a blank prepared and sent to it by the surety company, known as "Employer's Statement," filled in said blank, answers to eighteen certain questions therein propounded to it. The letter accompanying these questions contained the following:

"The company desires to have answers to the following questions and answers will be taken as a part of the consideration for the bond, if issued."

This form, following the questions, contained the further provision:

"It is agreed that the above answers are to be taken as conditions precedent and as the basis of the said bond applied for, or any renewal or continuation of the same that may be issued by the Southern Surety Company of Denison, Tex., to the undersigned upon the person above named."

This was signed by the Tyler & Simpson Company on February 17, 1908, and returned to the surety company. Among the questions submitted to the Tyler & Simpson Company and by it answered were the following:

"Q. 12a. What means will you use to ascertain whether his accounts are correct? A. Monthly balances and watching them. Q. 12b. How frequently will they be examined? A. ———. Q. 13. When were his accounts last examined? A. Each account is examined monthly. * * * Q. 15. Is there now, or has there been, any shortage due you by applicant? A. No; not that we know of. Q. 17. Have you ever sustained loss through the dishonesty of any one holding the position of the applicant? A. Yes. Q. 18. If so, state what means you have adopted to prevent the recurrence of similar loss. A. By a more careful scrutiny of accounts."

In its answer, denying liability, plaintiff in error charged:

"That the representations and promises contained in said employer's statement relative to the duties and accounts of said employee, C. E. Carter, and other matters, were expressly warranted to be true; that the same were not true; that said plaintiff never complied with its promissory warranty as to what means it would use to ascertain whether the employee's accounts were true, said promise being to make monthly balances and watch them, and, in the statement as to question as to how frequently such accounts would be examined, the answer was, 'We look after them all the time.' The answer to the question, 'Is there now, or has there been, any shortage due you by the applicant?' was, 'No; none that we know of.' Said answer was believed by the defendant to have been made after proper investigation, the fact showing that no investigation of any kind was made at the time or any subsequent month for more than a year, and that such investigation would easily have detected the shortage and defalcation of said Carter."

While said bond was in force, the principal, by means of false entries in the books, embezzled funds of his employer amounting to $1,610. This defalcation was admitted by plaintiff

in error. The case was tried to a jury, and, after both sides had rested, the court directed the jury to return a verdict for the plaintiff in the sum of $1,610, with $56.35 accrued interest. Prior to such instruction defendant demurred to the testimony, and then asked the court to instruct the jury to return a verdict for the defendant. These requests were overruled and exceptions saved. Defendant then requested the giving of the following instruction, which request was refused, and exceptions saved:

"You are instructed that the answers to the questions propounded in the employer's statement are in law warranties, and, if you find from the evidence that any of them material to the issues in this case were untrue and were not truthfully complied with, you must find your verdict for the defendant."

Motion for new trial being overruled, the cause is brought here for review.

*Wm. T. Hutchings* and *Wm. P. Z. German,* for plaintiff in error.

*Davis & Thomason,* for defendant in error.

Opinion by SHARP, C. (after stating the facts as above). The several assignments of error may properly be considered under one head, and involve the primary question: Was there a breach on the part of the insured of the conditions of the bond such as would release the surety? That the answers to the questions submitted, taken in connection with the bond itself, constitute in law warranties, we think there can be no reasonable doubt. The language of the bond and the employer's statement show that it was the express intention of the contracting parties that the representations, promises, and answers were warranted to be true, and should be taken as conditions precedent, and as the basis of the bond.

In *Willoughby v. Fidelity & Deposit Co. of Md.,* 16 Okla. 546, 85 Pac. 713, 7 L. R. A. (N. S.) 548, this court said:

"It has long been the settled law in fire and life insurance, that where statements and representations have been made by the insured as the basis for the insurance, and by the terms of the policy, issued and accepted, said statements are made a part of

the policy itself, any material, false, and fraudulent statement made by the insured will avoid the policy. The reason for this rule is sound."

Having determined that the statements and representations by virtue of the terms of the engagement became warranties, and not mere representations, what rule of construction should then be applied in determining the question of liability of plaintiff in error under the testimony? It is a familiar rule in the law of insurance that, if a bond is fairly and reasonably susceptible of two constructions, one favorable to the insured, the other to the insurer, the former, if consistent with the objects for which the bond was given, must be adopted, and this for the reason that the instrument which the court is invited, to interpret was drawn by attorneys, officers, or agents of the insurer. *American Surety Co. of New York v. Pauly*, 170 U. S. 133, 17 Sup. Ct. 552, 42 L. Ed. 977. It was said by Harlan, J., in the opinion:

"There is no sound reason why this rule should not be applied in the present case. The object of the bond in suit was to indemnify or insure the bank against loss arising from any act of fraud or dishonesty on the part of O'Brien in connection with his duties as cashier, or with the duties to which in the employer's service he might be subsequently appointed. That object should not be defeated by any narrow interpretation of its provisions, nor by adopting a construction favorable to the company if there be another construction equally admissible under the terms of the instrument executed for the protection of the bank."

*Travelers' Insurance Company v. McConkey*, 127 U. S. 661, 8 Sup. Ct. 1360, 32 L. Ed. 308; *First Nat. Bank v. Hartford Fire Ins. Co.*, 95 U. S. 673, 24 L. Ed. 563; *Reynolds v. Commerce Fire Insurance Co.*, 47 N. Y. 600; *Bank of Tarboro v. Fidelity & Dep. Co. of Md.*, 128 N. C. 366, 38 S. E. 908, 83 Am. St. Rep. 682; *Champion Ice Mfg. & C. S. Co. v. Amer. B. & Tr. Co.*, 115 Ky. 863, 75 S. W. 197, 103 Am. St. Rep. 356; *Remington v. Fidelity & Dep. Co. of Md.*, 27 Wash. 429, 67 Pac. 989; *U. S. Fidelity & G. Co. v. First Nat. Bank*, 233 Ill. 475, 84 N. E. 670; *Amer. Bonding Co. v. Spokane Bldg. & L. Soc.*, 130 Fed. 737, 65 C. C. A. 121; *Aetna Indemnity Co.*

·v. *Crowe Coal & Mining Co.*, 154 Fed. 545, 83 C. C. A. 431; *Livingston et al. v. Fidelity & Dep. Co. of Md.*, 76 Ohio St. 253, 81 N. E. 330; *Guthrie Nat. Bank v. Fidelity & Dep. Co. of Md.*, 14 Okla. 636, 79 Pac. 102; *Id.*, 17 Okla. 397, 87 Pac. 300.

It is urged by counsel for plaintiff in error that the promises and agreements on the part of the insured to exercise and maintain over the employee such a supervision as contemplated in his bond of indemnity was not observed; hence, there has been a breach of the bond on the part of the insured. Unless there was a substantial compliance with these undertakings, the conclusion urged by counsel would probably be true. However, in such breach the burden of proof would rest on the insurer. *United States Fidelity Co. v. First Nat. Bank*, 233 Ill. 475, 84 N. E. 670; *Perpetual B. & L. Soc. v. U. S. Fid. & Guar. Co.*, 118 Iowa, 729, 92 N. W. 687; *Bank of Tarboro v. Fidelity & Dep. Co.*, 128 N. C. 366, 38 S. E. 908, 83 Am. St. Rep. 682; *T. M. Sinclair & Co. v. National Surety Co.*, 132 Iowa, 549, 107 N. W. 184; *Jones v. Accident Association*, 92 Iowa, 658, 61 N. W. 485.

We have carefully examined the entire record in this case, and fail to find any evidence tending to establish, directly or by fair inference, that there was any false statement or representation, affirmative or promissory, establishing a breach of the bond on the part of the insured, but, on the contrary, the undisputed evidence shows that monthly balances during the period of the employment were made, and that the accounts of the employee were looked after and examined monthly; that daily reports were sent from Ardmore to the home office at Gainesville. Monthly reports were made on the last day of the month or the first day of the following month; that the reports so made were compared with the accounts kept against the Ardmore office by the home office and always balanced; that the employee was watched, the same as other employees, and that the employee's accounts were examined, found to be correct, and showed a proper balance; that the insured had no suspicion of the dishonesty of the employee, who had theretofore been in its employ for

a period of five years. These reports were examined, not only by the assistant secretary at the Ardmore office, but by the home office at Gainesville. The statements, reports, and examinations of the books showed the accounts of the employee to be correct. This was all that was necessary and that the law required.

In *American Bonding Company of Baltimore v. Morrow,* 80 Ark. 49, 96 S. W. 613, 117 Am. St. Rep. 72, an examination by the auditing committee composed of certain directors of the bank was held sufficient, though they were not expert accountants. It was said:

"The terms of the bond and the alleged warranty in the application do not call for an examination to be made by a committee of expert accountants. It was only provided that the examination should be made by the auditing committee of the bank directors. This provision contemplated no more than just what was done—an examination by a committee of men selected from the ordinary business avocations, reasonably capable of comprehending the condition of the accounts of the bank."

There, as here, the employee successfully concealed his defalcation from his employers, notwithstanding the fact that they made a reasonably diligent examination from month to month. The fact that those examining the reports and books did not succeed in finding out the wrongdoings for a time, does not demonstrate that there was a failure in the performance of their duty. It was further said in this case:

"If that process of reasoning should be followed out, it would necessarily defeat the objects of the bond. It was from just such a condition of affairs that the bank sought indemnity. As has been well said: 'An employer would need no insurance against that close and relentless vigilance which makes stealing impossible.' (Hammond, J., in *Guarantee Co. v. Mechanics' Bank,* 80 Fed. 766, 26 C. C. A. 146.)"

In *Remington v. Fidelity & Deposit Co. of Md.,* 27 Wash. 429, 67 Pac. 989, the court said:

"At the time of this examination, the appellant and Bishop made the examination which appellant had agreed to make, and which it was his custom to make, and at that time the books were apparently correct; and he had no knowledge or suspicion of

any default, and had no means of determining that there was any default, on the part of Bishop, without an expert examination of all his accounts and transactions, which would require an expert bookkeeper, and which he himself was not competent to make. The certificate appears from the evidence to have been made in the utmost good faith. There was no fraud practiced by the appellant in obtaining the extension of the insurance."

If it be assumed that the rendering monthly balances and watching the employee by a careful scrutiny of his accounts means only such a thorough and consistent examination or audit as would necessarily discover the slightest irregularity there might exist, however cunningly concealed, then, of course, the position of plaintiff in error would be sound, but this is manifestly not the meaning of the promise made. Neither is it within the rule of construction heretofore announced. If employers, who have sought to procure from their employees indemnity insurance, are to be held to such a rigid method of examination and supervision over the accounts of their employees, there would be little need of any necessity for purchasing fidelity insurance. When it enters the mind of a trusted employee to criminally appropriate funds from his employer, he then and there matures his plans for covering his default. He has the advantage over his employer, since he knows what the real facts are, while his employer is ignorant and unsuspecting of the true condition.

The testimony in this case shows that the defaulting bookkeeper had an unquestioned reputation for honesty and fidelity, and not the least suspicion existed that he was untrustworthy or not deserving of the unlimited confidence placed in him. There is nothing in the contract of insurance defining the character and detail required in the examination or audit of the books and accounts, or of the supervision that the employer should exercise over the employee, and, in the absence of a specific requirement, we must conclude that only such as was usual and customary and fairly inferable from the terms of the bond was necessary. *United States Fidelity Co. v. First National Bank,* 233 Ill. 475, 84 N. E. 670; *Fidelity & Casualty Co. v. Gate* ·

*City National Bank,* 97 Ga. 634, 25 S. E. 392, 33 L. R. A. 821, 54 Am. St. Rep. 440; *Pacific Fire Ins. Co. v. Pacific Surety Co. of Cal.,* 93 Cal. 7, 28 Pac. 842; *American Bonding Co. v. Spokane Bdg. & Loan Soc.,* 130 Fed. 737, 65 C. C. A. 121.

In *Phoenix Insurance Co. of Brooklyn v. Guarantee Company of North America,* 115 Fed. 964, 53 C. C. A. 360, Caldwell, C. J., speaking for the Eighth Circuit Court of Appeals, said:

"By its answer to question 17 the plaintiff did not agree that it would employ a person to watch its cashier, and see that he deposited all the money and checks received by him in bank in the form in which he had received the same, and that he would make all disbursements by check and that all checks should be indorsed 'For Deposit.' If it had undertaken to do this, it would not have needed a bond of indemnity. It was asked to ·what extent the practice would be followed, and it answered, 'Fully.' The natural and plain meaning of this answer was that it would adopt that method of transacting its business, and exercise a. reasonable supervision over its cashier to see that the practice was pursued. We cannot give the warranty any greater scope than this without leading to an absurdity."

It was further said by the court:

"In effect, the contention of the defendant is that the plaintiff warranted that its cashier, Kelly, would indorse all checks 'For .Deposit,' and deposit the proceeds in bank to the credit of the plaintiff, and pay the same over to its proper agent, and that the plaintiff took upon itself the burden of seeing that this was done, and that, if Kelly was guilty of a breach of his duty in this regard, although the fact was unknown to the plaintiff, and could not be discovered by it with reasonable diligence, it nevertheless constituted a breach of the plaintiff's warranty, and imposed no liability on the defendant to pay the resulting loss. Such a construction of the contract would divest it of all semblance to a contract of indemnity against Kelly's malfeasance or misfeasance. If the indemnity company cannot be held liable in this case, it never can be held liable in any case. In short, if we give the alleged warranties the scope which the defendant claims should be given to them, no bond of indemnity would ever be taken out by an employer, because he would assume the full burden of watching his employee, and relieve the indemnity company of all responsibility."

The answers to the questions in this case, while not the same, are very similar in their import to the case under consideration, and we concur fully in the reasoning of the court as well as in the conclusions reached. In this case, Sanborn, C. J., who delivered the opinion of the court in *Rice v. Fidelity & Deposit Co. of Maryland,* 103 Fed. 427, 43 C. C. A. 270, cited and relied upon by counsel for plaintiff in error, dissented. It is admitted by counsel for plaintiff in error that surety bonds are intended to cover only such losses that reasonable prudence cannot guard against. The object of an indemnity bond is to indemnify; and if it fails to do this, either directly or indirectly, it fails to accomplish its primary purpose and becomes worse than useless. It is worthless as an actual security, and misleading as a pretended one. *Bank of Tarboro v. Fidelity & Deposit Co. of Md.,* 128 N. C. 366, 38 S. E. 908, 83 Am. St. Rep. 682.

The last expression of the United States Supreme Court on the proper construction to be given the terms of such bonds is in *Fidelity & Deposit Co. v. Courtney,* 186 U. S. 342, 22 Sup. Ct. 833, 46 L. Ed. 1193, in which one of the questions was the meaning that should be given the words: "That the employer shall immediately give the company notice," etc. Mr. Justice White, speaking for the court, said:

"The parties intended by the language used that the notice in each case should be given so soon after the fact transpired that, in view of all the circumstances, it would be reasonably immediate. If a notice is given with due diligence under the circumstances of the case, and without unnecessary and unreasonable delay, it will answer the requirements of the contract" —citing cases.

And such is the proper rule of construction to be applied here. The words of the bond are to be construed liberally in favor of the insured, and not given a technical or strained construction in order that the purpose of the bond may be defeated and the undertaking of the parties rendered nugatory. We have read all the authorities cited by counsel for plaintiff in error carefully, and find little contained therein in conflict with, but much that lends strong support to, these conclusions.

It was said by this court in *Guthrie National Bank v. Fidelity & Deposit Co. of Md.,* 14 Okla. 636, 79 Pac. 102, *Id.,* 17 Okla. 397, 87 Pac. 300:

"It is true that the bank could have discovered Phillips' shortage if it had checked up the books of the bank with that object in view; but the suspicion of the officers of the bank had never been aroused. The books were checked up in the ordinary course of business, as such books usually are, and the bank had a right to assume that his accounts were kept correctly, in the absence of some fact tending to arouse suspicion that would be sufficient to put it upon inquiry."

This language, in substance, is used in the same case when again before the court. *Fidelity & Deposit Co. of Md. v. Guthrie National Bank,* 17 Okla. 397, 87 Pac. 300.

Neither do we think there was any false statement made in answer to the question: "Q. Is there now, or has there been, any shortage due you by applicant? A. No; not that we know of." It is admitted that at the time this representation was made the employee was short in his accounts $490. The answer to the foregoing question depends upon the interpretation to be given to certain provisions of the bond and to the answer given thereto. The contention of the plaintiff in error is that the insured thereby warranted that Carter had never been short in his accounts. But it is not shown, nor was it even strongly urged, that the insured had any knowledge of this shortage until in May following.

The answer is not a positive affirmation that the employee was not short, only that the insured had no knowledge of any shortage. This answer in the form set forth was accepted by the insurer as satisfactory. No effort was made to obtain more definite information, and the plaintiff in error will not now be heard to say that, because the answer was not positive in its terms, or because the insured before submitting the same did not make the audit of the employee's books, the insurer was thereby justified in placing an unwarranted construction on said answer. *Perpetual Bldg. & Loan Soc. v. U. S. Fidelity & Guar. Co.,* 118 Iowa, 729, 92 N. W. 686; *American Bonding Co. v. Spokane B. & L.*

*Soc.,* 130 Fed. 737, 65 C. C. A. 121; *Pacific Fire Ins. Co. v. Pacific Surety Co. of Cal.,* 93 Cal. 7, 28 Pac. 842; *Model Mill Company v. Fidelity & Deposit Co. of Md.,* 1 Tenn. Ch. App. 365; *First National Bank v. Fidelity & Guarantee Company,* 110 Tenn. 10, 75 S. W. 1076, 100 Am. St. Rep. 765.

Knowledge of a defalcation often depends upon a long train of events, and the examination of extended accounts. Discrepancies or irregularities confirmatory in themselves of guilt are often explainable, or turn out to be entirely consistent with innocence. The confidence of years is not ordinarily shattered in an instant, and the employer may be commendably slow to be convinced of the dishonesty of the person whom he has implicitly trusted. Unjust inferences and false accusation are always to be avoided. The truth, only after being ascertained with reasonable certainty, can be safely made known. *Perpetual Bldg. & Loan Ass'n v. U. S. Fidelity & Guar. Co.,* 118 Iowa, 729, 92 N. W. 686; *Aetna Indemnity Co. v. Crowe Coal & Mining Co.,* 154 Fed. 545, 83 C. C. A. 431.

The remaining question for consideration is: Did the court err in taking the case from the jury, and in directing a verdict for the plaintiff? The execution of the bond, the defalcation of the employee during its continuance, and the amount of the shortage were admitted. It devolved upon the plaintiff in error to prove a failure on the part of the insured to comply with its undertaking, as shown by the terms of the bond, including the employer's statement. *United States Fidelity Co. v. First National Bank,* 233 Ill. 475, 84 N. E. 670; *Perpetual Bldg. & Loan Soc. v. U. S. Fidelity & G. Co.,* 118 Iowa, 729, 92 N. W. 687; *Bank of Tarboro v. Fidelity & Deposit Co.,* 128 N. C. 366, 38 S. E. 908; 83 Am. St. Rep. 982; *Sinclair & Co. v. National Surety Company,* 132 Iowa, 549, 102 N. W. 184; *Jones v. Accident Association,* 92 Iowa, 658, 61 N. W. 485. This it has failed to do. We have carefully read the entire record, and have not found any testimony showing, or fairly tending to establish, the allegations of the answer. Neither is there anything in the testimony from which it may be inferred that the undertaking was breached by

defendant in error. On the other hand, as has already been stated, the testimony shows a substantial compliance with the engagement entered into. Such being the fact, there was no such contradictory testimony or inference arising therefrom as called for the interposition of a jury other than to act in obedience to the order of the court in returning a directed verdict.

"If the evidence on behalf of the plaintiff is sufficient to prove his cause of action, and there is no substantial evidence offered by defendant upon any material issue in the case, it is not error for the trial court to direct the jury to return a verdict for the plaintiff." (*Cockrell et al. v. Schmidt,* 20 Okla. 207, 94 Pac. 521, 129 Am. St. Rep. 737.)

The judgment of the trial court should therefore be affirmed.

By the Court: It is so ordered.

All the Justices concur.