## McNEAL v. TRUESDELL et ux.

No. 20939.   Opinion Filed June 20, 1933.

Morse. Garrett, for plaintiff in error.

Carter Smith, for defendant in error.

BUSBY, J. The writer hereof is of the opinion that this appeal is wholly without merit.

The record discloses about the following state of facts: Plaintiff in error, P. A. McNeal, plaintiff in the trial court, sued the defendants in error, E. D. Truesdell and wife, Lula M. Truesdell, defendants in error, seeking to foreclose a mortgage on the latter's home. For the sake of convenience the parties herein will be referred to as plaintiff and defendants, as they appeared in the court below. Plaintiff based his cause of action solely on the ground that his mortgage provided that defendant should "keep the building upon the mortgaged premises insured in some reliable fire insurance company" for the sum of $4,000, and that defendants failed to comply with this provision. The plaintiff, McNeal, acquired the mortgage in question on October 8, 1928, by purchase from the Mortgage Bond Company of New York. At the time of the purchase there was transferred to him a fire insurance policy in the amount of $4,000, which policy expired January 4, 1929. The policy was maintained for the benefit of the defendants and the holder of the mortgage. On December 28, 1928, defendant Truesdell, knowing the policy would lapse in a few days, went to the office of the Braniff Investment Company, insurance agents, and had the policy renewed in the same company which had issued the previous policy for a period of one year. The premium cost $24, which the Truesdells paid. The agent of the Braniff Company enclosed the policy in an envelope with postage thereon and properly addressed and mailed the same to P. A. McNeal, Mayo Building. Tulsa, which was plaintiff's address. The following letter was contained in the envelope with the policy:

"December 28, 1928.

"Mr. P. A. McNeal,

"Mayo Building

"Tulsa, Okla.

"In re: Loan No. 14,479, Truesdell.

"Dear Sir: We are enclosing herewith Svea Policy No. DC-90790 covering property at 120 North Zunis, in the amount of $4,000 premium $24, for a period of one year, expiring January 4, 1930, Dickey-Ashby-Fountain Company, agent.

"The above policy is renewing Svea Policy No. 75220, which expires January 4, 1929.

"Yours very truly,

"Braniff Investment Company,

"Manager"

The letter was not returned. Apparently because Truesdell did not deliver the policy to him in person, McNeal, on January 15, 1929, had one D. C. Rose, who occupied the same office with McNeal, to issue a three-year policy on the mortgaged property for a premium of $60. This extended the insurance for a term beyond the due date of the mortgage. McNeal directed Rose to mail a statement for the $60 to defendants. Truesdell testified that upon receipt of this statement he phoned Rose that a policy had been issued already and he mailed him the following letter that he had received from the Braniff Company:

"December 28, 1928

"Mr. E. D. Truesdell,

"120 North Zunis Ave.

"Tulsa, Oklahoma.

"In re: Loan No. 14479.

"Dear Mr. Truesdell: In accordance with your request, we are renewing insurance in the amount of $4,000, covering your property at the above address, for a period of one year, expiring January 4, 1930, Dickey-Ashby-Fountain Company, agent.

"We wish to thank you for this business and are enclosing herewith invoice for premium in the amount of $24, for which we shall appreciate remittance at your earliest convenience.

"Yours very truly,

"Braniff Investment Company,

"Homer King, Manager."

Four or five days later Truesdell went to the office of Mr. Rose, which was also the office of plaintiff, McNeal, and procured from Rose a return of the letter above set out from the Braniff Company. This visit was four or five days after the issuance of

the Rose policy. Rose admitted he was advised by Truesdell of the issuance of the Svea policy in time to cancel his policy without cost to any one. He did not want to do this because plaintiff, McNeal, had guaranteed payment of the policy. McNeal was in the room when Truesdell talked to Rose, but took no part in the conversation. Rose advised McNeal that Truesdell had been given the letter. This visit was fixed as of January 20, or 21, 1929. On January 28, 1929, plaintiff filed suit for foreclosure of his mortgage for the entire amount thereof, alleging that defendants had defaulted the terms thereof by failure to deliver to plaintiff a new policy of fire insurance in lieu of the one which expired January 4, 1929. Defendants filed answer two days later. While the trial was pending, and on May 1, 1929, there became due on the mortgage a payment of $217. Defendants deposited this sum to the credit of plaintiff in the First National Bank of Tulsa. Failure to pay any part of principal and interest is not urged as a default. We are concerned only with the question of the delivery of the insurance policy.

At the time of the trial plaintiff sought judgment of foreclosure and attorney's fees in the sum of $400. At the close of the trial before the court, the court rendered judgment, saying:

"This is an equitable action. It will be the judgment and order of this court that plaintiff's foreclosure of the mortgage be denied on condition only that the defendant pay to the plaintiff the amount of the premium that the plaintiff has paid on the policy. * * * I think this plaintiff was justified in taking out the policy, under the circumstances perhaps; at least, sufficiently justified that he should be reimbursed therefor, but under all the facts and circumstances, I will—I think it would be using the court and equity for inequity to permit the plaintiff to foreclose under those circumstances. * * * This is an equitable action. The costs of this action will be adjudged against the defendant. Of course, this does not include attorney's fees, but the costs of this action. The payment of the actual amount due on the mortgage, as I understand, has been deposited in the bank which was the properly designated bank under the mortgage. Is that right? Mr. Hudson (counsel for plaintiff): Yes, sir."

The record shows that defendants then paid to the court clerk for plaintiff's benefit the $217 item and the $60 item, with interest as required by the court and the court costs.

Defendants in their brief say they complied with the judgment of the court, not because they thought it was a proper judgment for a court of equity to render under the circumstances, but to settle the litigation. Plaintiff then appealed to this court, urging that the trial court erred for failure to declare plaintiff's mortgage due and failure to enter a judgment of foreclosure thereon, and for attorneys' fees prayed for in plaintiff's petition in the sum of $400. The defendant filed no cross-appeal, but asked that this court render such judgment as in equity should be rendered.

If the trial court erred, it was in favor of the plaintiff as follows: (1) Charging the defendant 10 per cent. interest on the $217 from May 1, 1929, until paid to the court. (2) Charging against the defendant the $60 item for the insurance policy paid for by plaintiff, together with interest thereon. (3) Charging the costs of the action against the defendants. Since the defendants filed no cross-appeal, however, no judgment for relief will be granted them herein on these items.

The trial court did not err in refusing to enter a judgment of foreclosure on plaintiff's mortgage. The defendants were diligent in having a new insurance policy issued before the expiration of the prior one. It was in the same insurance company in which the property was insured in favor of the Mortgage Bond Company of New York before plaintiff purchased the mortgage. The reliability of this insurance company is in no wise questioned. Defendant was entitled to insure his property in any reliable insurance company for one year at a time if he so desired, instead of three, as required by plaintiff, and particularly so since the three-year period extended the policy beyond the expiration date of the mortgage. Defendants were not required to deliver the policy to plaintiff in person. It would be ridiculous to make such requirement. Suppose plaintiff had not purchased the mortgage from the New York Company and this company had demanded that the Truesdells travel from Tulsa, Okla., to New York City and make a personal delivery of the renewal policy? Would plaintiff contend this was a reasonable requirement, and if not complied with that defendants would default in the terms of their mortgage? However, plaintiff did not even demand that defendants make personal delivery. He made no demand of any kind on defendants as to the delivery of any renewal policy. He filed suit even at a time when the three-year policy he had had Rose issue could have been canceled out without loss to either party. Apparently he demanded what he thought was an observance of the letter of

134

the law, while he himself failed to observe the spirit of the law.

The defendants had a right to depend upon the United States mail in delivering the policy. The rule is stated in 32 Corpus Juris, section 230, pp. 1127-1128:

"A policy of insurance is delivered to the insured when it is deposited in the mails, duly directed to insured at his proper address, and with postage prepaid, even though, in fact, he never receives it. Likewise, the policy is constructively delivered when it is mailed to an agent unconditionally, and for the sole purpose of delivery to the insured, even though the agent does not actually deliver the policy to insured."

Said authority cites numerous cases from various states, among them being the Kansas case of Sutton v. Wright, 94 Kan. 499, 147 P. 62.

Justice Williams, speaking for the court, quoted with approval the rule announced in Cooley on Insurance, at page 447, in the case of Van Arsdale-Osborn Brokerage Co. v. Cooper, 28 Okla. 598, 115 P. 779, as follows:

"The deposit in the post office by an insurance company of a policy, with postage prepaid, directed to the insured at his place of residence, is a delivery to the insured."

Justice Sharp, in a later case of Van Arsdale-Osborn Brokerage Co. v. Robinson, 36 Okla. 123, 128 P. 107, with reference to personal delivery, stated:

"The manual delivery of the policy was not essential to the delivery of the contract of insurance. Not only was the application approved, but the policy was issued and placed in an envelope stamped and addressed to defendant * * * so that even were delivery necessary, the placing in the post office, in the manner shown by the testimony, would have constituted a sufficient delivery, though in fact not received by the addressee."

The judgment of the trial court in refusing plaintiff a decree of foreclosure and judgment for attorney's fees is affirmed. Costs of this appeal shall be assessed against the plaintiff.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, ANDREWS, McNEILL, OSBORN, and BAYLESS, JJ., concur. WELCH, J., absent .