**MARYLAND CASUALTY CO. v. NORVILLE.**
No. 1256.

Circuit Court of Appeals, Tenth Circuit.
Dec. 9, 1935.

Charles M. Morris and Louis H. Callister, both of Salt Lake City, Utah (Edward R. Callister, of Salt Lake City, Utah, on the brief), for appellant.

Ralph T. Stewart, of Salt Lake City, Utah (C. W. Wilkins, Samuel J. Carter, and Emerson B. Thatcher, all of Salt Lake City, Utah, on the brief), for appellee.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

BRATTON, Circuit Judge.

This is an action to recover on a fidelity bond. Plaintiff resided in Salt Lake City, Utah, at the times which are material here and was engaged in the automobile business there. In April, 1933, he and J. R. Steele, also a resident of that city, entered into a written contract in which Steele was employed to purchase automobiles for plaintiff in eastern centers and providing that plaintiff would advance the money necessary to that end; that Steele would take title to the purchased automobiles in the name of plaintiff, immediately forward the original invoices and title papers to plaintiff by air mail, and transport the automobiles to Salt Lake City; that plaintiff would then have the option to accept or reject them; that upon acceptance he would pay Steele a commission of $50 on each car; that upon rejection Steele would sell the car outside of Salt Lake City and reimburse plaintiff for the money advanced with which to purchase it; and that Steele would furnish a fidelity bond in the sum of $7,500 to indemnify plaintiff against fraud, dishonesty, forgery, embezzlement, wrongful abstraction, or willful misapplication of the money and

property intrusted to him under the terms of the agreement.

Application was made to defendant to issue the bond. Defendant submitted a questionnaire to plaintiff respecting the proposed employment and it was duly answered, signed, and returned. The answers described the nature of the employment, the manner of compensating the agent, and reference was made to the contract. It was further stated that at times the agent would probably have as much as $7,500 in cash in his custody and might retain control of it indefinitely; that he would be authorized to disburse it; that he would be permitted to retain balances left on hand and would not be required to deposit them in a bank; that he would be authorized to handle bills of lading covering the automobiles; that he would not be authorized to sign or indorse checks on behalf of plaintiff; that plaintiff would inspect, audit, and verify his books, accounts, stock, and securities at least once in each period of fifteen days; and that he was not then indebted to plaintiff. It was expressly provided therein that the answers made were warranties and that they constituted the basis and formed a part of the consideration for the bond. Upon return of the signed application and after an agent of defendant had examined a copy of the contract, the bond in suit was executed.

Steele went to Detroit, purchased automobiles with the money advanced under the terms of the contract, transported them to Salt Lake City in caravans from time to time, and delivered them to plaintiff. He sometimes accompanied them and he sometimes sent them by others. Plaintiff made several advancements of money. At first he sent it directly to Steele at Detroit by telegraphic transmission. Steele originally kept it in his possession, but he later opened an account in his name in the Detroit Savings Bank. Plaintiff and Steele subsequently directed the bank to change the account to that of Norville Motor Company and authorized payment of checks signed by Steele; and after July 7th plaintiff forwarded the advancements to the bank for deposit in that account. In September Steele withdrew $4,783.50 from the account and absconded with it together with a truck valued at $600 which he purchased and delivered to plaintiff under the contract and which plaintiff subsequently lent to him to be driven to Detroit and return.

Plaintiff alleged the defalcations, due submission of claim, demand for payment, and its refusal. The defense was nonfulfillment of conditions of the bond. The case was tried to a jury and a verdict was returned for plaintiff. Judgment was entered upon it and this appeal followed.

The question of compliance with the covenants contained in the application was submitted to the jury, the court instructing that there could be no recovery unless plaintiff had fulfilled the statements made therein. The manner in which that issue was submitted is not challenged, but reversal of the judgment is sought on the ground that a verdict for defendant should have been directed because the undisputed testimony shows that plaintiff failed to audit the accounts, books, and records of the agent once in each period of fifteen days. The application furnished stated that plaintiff would make such audits, and all answers were expressly made warranties. A warranty made in connection with an application for fidelity insurance is either affirmative or promissory. An affirmative warranty vouches that a fact exists at the time the policy becomes effective, while a promissory warrant provides that some act will be done or withheld after the effective date ·of the policy. Sentinel Life Ins. Co. v. Blackmer (C.C.A.) 77 F.(2d) 347. Performance of a promissory warranty is a condition precedent to the right of recovery and its absence exonerates the insurer from liability regardless of whether it is prejudicial. Southern Surety Co. v. MacMillan Co. (C.A.) 58 F.(2d) 541. The answers contained in the application formed the basis for the bond and constituted a part of the consideration for its issuance. The assurance that the accounts, books, and records would be audited was a promissory warranty and compliance with it was a condition precedent to liability on the part of the company. It therefore becomes necessary to determine whether plaintiff complied with that provision.

The manner of making the required audits was not specified and accordingly whether a reasonable method was employed was a question for the jury. There was testimony tending to show that Steele went to Detroit soon after the contract was executed and began the purchase of automo-

biles. They were transported in caravans to Salt Lake City and delivered to plaintiff. Sometimes he accompanied them and sometimes he sent them by others. Complete settlement was had when he accompanied a caravan. Such settlement was had in May, in June, and in July. Between settlements and throughout their association, Steele sent receipts for money deposited on the purchase price of automobiles; he sent invoices and title papers on others and monthly bank statements were furnished after the account was opened in Detroit, the last being on September 1st. In addition, plaintiff and Steele talked on long-distance telephone on an average of once a week, the latter reporting the number of cars purchased, the price, and where they were located, with other information. An employee of Steele reached Salt Lake City with the last caravan about September 1st. He brought receipts, invoices, title papers, and full information touching the account. Plaintiff kept a current record of the automobiles purchased, the amount paid for them, the amount deposited on others, the amount Steele had on hand, and the condition of the bank account. Plaintiff went over the account every three or four days and checked it with the data furnished in the manner indicated. Everything was regular until September 9th, when Steele withdrew the money and absconded. He telegraphed plaintiff on the 15th that he was leaving with a caravan of automobiles on the following morning and that invoices were being forwarded by air mail. He telegraphed from South Bend, Ind., the following day that he was en route, and on the 23d he sent a message from Cedar Rapids, Iowa, advising that an employee had reported from Fremont, Neb., concerning a convoy of automobiles in transit. Plaintiff telegraphed the bank in Detroit on the 25th and learned that the entire deposit had been withdrawn. The defendant knew at the time the bond was executed that plaintiff was not an auditor and that the accounts, books, and records would not be expertly audited. It likewise knew the nature of the employment; that Steele would be in Detroit or en route virtually all of the time; and that he would be in Salt Lake City very little. It could not have reasonably understood or anticipated that he would make a trip there every two weeks for the purpose of submitting in person full and complete records to be inspected, audited, and verified, nor could it have anticipated that plaintiff would make trips to Detroit for that purpose. In the very nature of things, the contract could not reasonably have been performed in that manner. Both plaintiff and defendant must have understood that, having due regard for all of the known facts, a reasonable method of checking the account at least once in each period of fifteen days would be employed. That was the nature and essence of the promissory warranty in question, and in view of the peculiar circumstances attending the business which was insured, it cannot be said that the method used did not constitute substantial compliance with it. Compare Title Guaranty & Surety Co. v. Nichols, 224 U.S. 346, 32 S.Ct. 475, 56 L.Ed. 795; Phenix Ins. Co. v. Guarantee Co. (C.C.A.) 115 F. 964; Southern Surety Co. v. Tyler & Simpson Co., 30 Okl. 116, 120 P. 936; Metropolitan Club v. Massachusetts Bonding & Ins. Co., 127 Wash. 320, 220 P. 818; American Bonding Co. v. Morrow, 80 Ark. 49, 96 S.W. 613, 117 Am.St.Rep. 72.

■ The further complaint is made that plaintiff breached the bond by consenting that the trust funds be deposited in the bank in Detroit in the name of Norville Motor Company and that Steele be authorized to draw checks thereon. The application clearly disclosed that Steele would be intrusted with cash to the amount of $7,500 and that he would have full authority to disburse it. Explanation for use of cash lay in the fact that due to an acute banking condition then existing, automobile manufacturers and dealers were reluctant to accept checks from purchasers. The money deposited in the account against which Steele was authorized to check consisted exclusively of advancements intrusted to him for the purchase of automobiles under the terms of the contract. It was the cash which the defendant was advised would be intrusted to him. The promissory warranty that Steele would not be authorized to draw checks on behalf of plaintiff clearly had reference to plaintiff's regular bank account maintained in connection with his business at Salt Lake City, not a special account in Detroit where the automobiles were being purchased in which only the cash intrusted to Steele was deposited. That is the rational import of the warranty and the parties must have thus understood it.

■ The statement in the application that Steele was not then indebted to plaintiff was an affirmative warranty. It is insisted that he was in fact indebted to plaintiff on a car contract; that the warranty was false and recovery cannot be awarded. No such issue was tendered by the answer. The contention is entirely outside the issues joined on the face of the pleadings. That fact makes disposition of it and renders further discussion unnecessary.

■ Steele took title to some of the purchased automobiles in his name and immediately thereafter passed the title to plaintiff, but that is of no moment here. Neither the application nor the bond provided otherwise. Both were silent on the subject. The contract required that title be taken in the name of plaintiff, but its provisions were not made warranties in connection with the bond. In such circumstances, mere breach of the contract did not relieve the defendant of liability; otherwise the indemnity bond was utterly valueless.

The judgment is affirmed.